HOLLAND *v.* RAILROAD.

HOLLAND v. RAILROAD.

(Filed December 20, 1904).

1. NEGLIGENCE—*Presumptions—Master and Servant.*

The killing of an employee of a railroad company does not raise a presumption that the company was negligent.

2. NEGLIGENCE—*Master and Servant—Last Clear Chance.*

In this action for the death of an employee of a railroad company, the doctrine of the "last clear chance" is not applicable as against the defendant.

CLARK, C. J., and DOUGLAS, J., dissenting.

ACTION by M. H. Holland against the Seaboard Air Line Railway Company, heard by *Judge H. R. Bryan* and a jury, at May Term, 1904, of the Superior Court of MOORE County. From a judgment for the plaintiff the defendant appealed.

*W. J. Adams* and *Seawell & McIver* for the plaintiff.
*J. D. Shaw, U. L. Spence* and *Murchison & Johnson,* for the defendant.

MONTGOMERY, J. The plaintiff's intestate, employed by the defendant as rear brakeman and flagman on its extra freight train No. 578 going south, was on duty when, on the

morning of October 18, 1902, the train passed into the siding over the switch at Rockingham, there to await the passage of other trains of the defendant. He was acquainted with the rules of the company, one of which (Rule J) reads as follows: "When a train takes the side-track to be met or passed by another train, the conductor or flagman must remain at the switch used by his train to enter the siding, and when the train is clear of the main line and the switch is properly set, he will take a position not less than ten feet from the switch and give the 'go-ahead' signal to the approaching train, and must remain not less than ten feet from the switch until the approaching train has entirely passed the switch. No train will pass the switch which has been used by the train in taking the siding, unless the 'all-right' signal is given." The signal used after dark must be "white." When the train was well on the siding the conductor went to the railroad office on business and remained there until the collision hereafter to be described occurred, and the intestate went back to the switch and, according to the evidence of the conductor, changed it and locked it to the main line.

The intestate also had been ordered by the conductor when they left Raleigh that morning to "always when he headed in a switch to change it and lock it to the main line, and in my absence, to look out for the safety of the train." The intestate left the switch, returned to the caboose at the northern end of his train, entered it and never returned to the switch. While train 578 (intestate's) was on the siding two trains of the defendant, 38 and 40, coming from the south and going north, passed along the main line in safety. Afterwards, probably twenty or thirty minutes, train No. 33, a fast passenger train with engine and several heavy coaches, coming from the north and going to the south, with the right of way and at a speed of forty miles an hour, ran into the

switch which the intestate ought to have closed and guarded, under the rules of the company and the instructions of the conductor, and collided with the caboose on train 578 and killed H. L. Holland, the plaintiff's intestate.

On the question of negligence the usual three issues were submitted to the jury, which with their responses are as follows: 1. "Was the death of Holland caused by the negligence of the defendant as alleged in the complaint? 'Yes.'" 2. "Did Holland, by his own negligence, contribute to his death? 'No.'" 3. "Notwithstanding the contributory negligence of Holland, could the defendant, by the exercise of ordinary care, have prevented his death? 'Yes.'" At the request of the plaintiff his Honor instructed the jury as follows: "If the jury should find from the evidence that the plaintiff's intestate was an employee upon the defendant's train and was killed in the collision of the defendant's trains in the day-time, there is a presumption of negligence upon the part of the defendant, and in that case the burden is thrown upon the defendant to disprove negligence on its part." We think there was error in giving that instruction. So far as passengers are concerned, injuries suffered by them from contact with anything under the control and direction of the carrier, or which the carrier ought to have taken precautions against, or from the want or absence of anything which the carrier ought to have furnished, is sufficient to put him to his proof to show that he was not negligent; and therefore, upon that principle, a *prima facie* case of negligence is made out against a carrier upon the mere fact of a collision between trains. Shear. & Red., Vol. 2, sec. 516. In such a case the maxim *res ipsa loquitur* applies. The affair speaks for itself. And it must be that the same rule applies as to employees of a carrier. In such case neither the passenger nor the employee has anything to do with the management or control or with the schedule of the

trains.   But, in the case before us, it cannot be said that the maxim *res ipsa loquitur* applies.   One of the trains was on a side-track and had been there for some little time.   Who was at fault because of the collision, whether the defendant through its engineer of train 33, or the intestate whose duty it was to guard the switch against train 33, was a matter not explained by the collision itself, but dependant entirely upon the circumstances attendant upon the collision, to be shown by the evidence.   And there was evidence, outside of the rules under which he was doing service, going to show that the intestate was negligent.   It would be a strange rule of law if under such conditions a presumption of negligence on the part of the carrier, the defendant, should arise upon proof of the collision.

There was another error in the failure of his Honor to give to the jury a special instruction, asked by the defendant, in the following words: "If you answer the first issue 'No' you need not answer the other issues; that if you answer the first issue 'Yes,' then under all the evidence you will answer the second issue 'Yes,' and the third issue 'No.'" There was exception made by the defendant for the failure to give each of these instructions.   We think each of them should have been given.   Rule J of the company, which we have quoted in full, and of which the intestate had full notice, required him, not only when his train went in on the siding, to change the switch, but it also required him to take his position at the switch and remain not less than ten feet from it, until the approaching train had entirely passed the switch.   The whole of the evidence tended to show that he left the switch and went into the caboose and was killed in it, having never returned to the switch.   There is no dispute about the truth of that evidence, and but one conclusion can be drawn from it in reason.   *Hinshaw v. Railroad,* 118 N. C., 1047; *Neal v. Railroad,* 112 N. C., 841.   He neg-

lected a duty to stand by and guard that switch, and the Court should have instructed the jury to answer the second issue "Yes."

It was a question of law upon all the evidence. The jury answered the second issue "No," notwithstanding all the evidence tended to show that he did, and it is probable that the jury answered that issue as they did because of an erroneous instruction from the Judge on that point. The following is that instruction: "If the jury find from the evidence, under the rules of the company, that Holland, the intestate, was required to throw the switch to the main line, lock it, remain at or near it, and failed to do so, and that by reason of such failure he was killed, and that such failure was the *proximate* (italics ours) cause of death, then he is guilty of contributory negligence and the jury should answer the second issue 'Yes.'" In actions for negligence, where the three issues are submitted, the matter of proximate cause cannot be considered by the jury on the second issue. *Dunn v. Railroad,* 126 N. C., 343.

We think, too, the jury should have been instructed to answer the third issue "No." There was evidence tending to show that because of a sharp curve in the railroad track just before reaching the switch from the direction of Hamlet, the engineer of train 33 was prevented from seeing the switch signal at a greater distance than seventy or eighty yards—a distance too short in which to stop his train if he had discovered the danger signal at the switch; and the plaintiff contends that that faulty construction of the track, taken in connection with the location of the switch, was a continuing negligence on the part of the defendant, and that even though the plaintiff might have been negligent in leaving the switch, yet the defendant because of its continuing negligence had the "last clear chance" to prevent the injury. We are not of that opinion. We think that the proximate

cause of the injury was the failure to stand by and guard that switch; to stand there and see that it was locked to the main line; to see that it was kept locked to the main line until the very moment the engine of train 33 reached it; to stand there and see that no other person interfered with it. If he had stood there and discharged his duty, as the rules of the company and the instructions of the conductor required him to do, he could have prevented the accident, even though the engineer had failed to observe or could not have observed, because of a defect in the construction of the track, the signal at the switch in time to have stopped his train before reaching it.

New Trial.

WALKER, J., concurring. I concur in the result and in the opinion of *Mr. Justice Connor*. All things considered, the question at least is, Was the situation a safe one, if the intestate had kept the position assigned to him by the defendant at or near the switch, so that he could prevent any interference with it and guard against any resulting danger? If so, his failure so to act was the proximate cause of his death, as it was the sole efficient cause. The company had provided a perfectly safe method for the management of its train at that point, which if adopted would have saved the life of the intestate. As he alone disregarded it, and the engineer on No. 33 was not required to anticipate this negligence, his untimely death is referred by the law to his own fault in leaving his post of duty at a critical moment. If he did not leave the switch open, but it was changed by some one else after he left his place, or even by any accident, it could have been readjusted to the main track by him if he had been there and No. 33 would have passed and not have taken the siding.

It is suggested that Rule J was introduced by the plaintiff and on objection by the defendant was withdrawn, and that

this rule prescribed the duty of Holland in respect to the switch. Let this be granted, and there is still evidence in the case on the part of the plaintiff which shows that it was his duty to remain at the switch until No. 33 passed. Plaintiff's witness, Conductor Simpson, testified that he instructed Holland that morning to change the switch and lock it to the main line when he headed in and, in his absence, to look out for the safety of the train. There was but one possible thing to do after locking the switch to the main line in order to further protect his train, which was on the siding, and that was to watch the switch and see that it was not changed by any one else so as to endanger his train. The conductor further stated that he instructed him to look after the switches in his absence. If he had done this the accident would not have occurred. There was only one inference to be drawn from the evidence and that was against the plaintiff.

CONNOR, J., concurring. His Honor instructed the jury on the first issue that if they found that No. 33 was a first-class train, and No. 578 was an extra freight train, that under the rules No. 33 had the right of way and it was not the duty of the engineer to protect his train against the extra at Rockingham. That under the rules of the company the engineer had a right to presume that he could pass the switch at the siding where No. 578 was standing unless he was signaled not to do so. That if he did not know when he left Hamlet that No. 578 was on the siding a quarter of a mile east of Rockingham, then he had a right to presume that his track was clear, and he would not be required to stop or slow up for the siding; that if they believed the evidence the engineer of No. 33 did not know that No. 578 was on the siding; that if the jury find from the evidence that it was the duty of the flagman, Holland, after his train, extra 578,

had entered the siding at Rockingham, if they find that he had so entered, to remain at said switch and to signal the engineer of No. 33 to come ahead, if it was all right, or to stop if it was wrong, and that said Holland was not at said switch as No. 33 approached, then the engineer on No. 33 had the right to presume that the train on the siding had not used the siding switch and that the same was set to the main track.

The defendant asked his Honor to instruct the jury "that if they found that Holland, the intestate of the plaintiff, was required by the rules of the company to be at or near said switch north of Rockingham, about four hundred yards from the station, when No. 33 passed, and he was not there, and they further find that his failure to be there caused the said train to enter said switch, then you will answer the first issue 'No.' " His Honor gave the instruction, adding the words, "Provided you further find that the defendant used ordinary care." Defendant excepted.

Defendant requested his Honor to instruct the jury "that if they find from the evidence, under the rules of the company, that Holland, the intestate, was required to signal train No. 33 as it approached the switch leading to the siding upon which extra 578 was, and that the switch was set to the siding, and that he failed to do so, and that his failure contributed to and was the proximate cause of his death, then you will answer the first issue 'No.' " His Honor gave the instruction, adding the words "If you find that defendant used ordinary care." Defendant excepted.

I am of the opinion that these two last instructions were complete and correct propositions of law, and that the words "if the defendant used ordinary care" should not have been added. His Honor had explained to the jury the defendant's measure of duty. Certainly, if the plaintiff's intestate was guilty of negligence and such negligence was the proxi-

mate cause of his death, the first issue, "Was the death of Holland caused by the negligence of defendant as alleged in the complaint?" could not have been answered in the affirmative even if the defendant had not used ordinary care. It is not the failure to use ordinary care which gives a right of action, but it is such failure resulting in, that is, being the proximate cause of, the injury. *Morton v. Railroad,* 122 N. C., 910, and many other cases. The jury might well have concluded that, notwithstanding the finding that the plaintiff's intestate was guilty of negligence which was the proximate cause of his death, yet if the defendant failed to use ordinary care they should answer the issue in the affirmative. Of course, his Honor did not intend to so instruct them, but I think his language capable of that construction. Again, the jury were left without any instruction as to what was meant by ordinary care as applied to the facts of this case as they might find them to be. If, as his Honor had just told the jury, the engineer had a right to presume that the switch was set to the main track and was under no obligation to slow down, I cannot see any evidence of want of ordinary care on his part. It is said that there was negligence in the construction of the road approaching the switch. In respect to this question there is not sufficient evidence in the case to enable me to form any opinion. I could not say, as a matter of law, that there was a want of ordinary care in the construction of the road. By the plaintiff's own evidence the switch was in good condition and working order. Some one must have changed it after No. 38 and No. 45 passed. There is some evidence tending to show that the plaintiff's intestate did so. The witness Crump says that he saw the plaintiff's intestate, after No. 38 and No. 45 passed, about half way between the caboose and the switch, when he said "We will back out and go down on the main line where Mr. Simpson is, I reckon we can get ahead of No. 33." The

testimony of the witness is not very clear; in fact, there is an embarrassing want of clearness in all of the testimony. This was, however, for the jury.

I can see no reason for submitting the third issue in this case. There is to my mind no element of the "last clear chance" presented. The decision of the first issue practically settled the case.

In another trial there may be evidence in regard to the construction of the road and placing the switch and the reasons for making the curve so near to the switch. I concur in the opinion that there should be a new trial.

DOUGLAS, J., dissenting. I am unable to concur in the opinion of the Court in any aspect, either in its construction of the law or its understanding of the facts. The plaintiff, who knew nothing of the accident, introduced only two witnesses besides himself, Thompson and Simpson, both at the time of the accident being in the employ of the defendant, and now running as conductors on other roads. All the other witnesses were introduced by the defendant. The book of rules was produced by the defendant, and identified by defendant's witnesses alone. The record states that the "plaintiff offers in evidence the special rules printed on the time-table, numbered Q and J. Upon objection by defendant, Rule Q was ruled out by the Court and plaintiff excepted." The record also states that "Plaintiff introduced in evidence Rules 47-I, 47-J and 47-K from the book of rules of defendant. Defendant objected to the introduction of these rules, as not being applicable to the train in question. Plaintiff withdrew 47-J and 47-K. Rule 47-I was admitted, and read in evidence as follows: 'I. They are required to observe the position of all switches and know that such switches are right before passing over them.'" It does not directly state whether Rule J was admitted, but in any event

there is no evidence whatsoever that the intestate had ever been given a copy of the time-table containing the rule, or indeed had ever seen or heard of it. The opinion says that the intestate had full notice of Rule J. I find no evidence of that fact. If the opinion means that Rule J was in the book of rules for which the defendant introduced the intestate's receipt, I can only say that I find no evidence of that fact. If it means that Rule J in the time-table is the same as Rule 47-J in the book introduced by the plaintiff, I see no proof of that; but if there were, it was withdrawn upon the objection of the defendant, who contended that *these rules were not applicable to the train in question.* If these rules are not applicable to the train in question, they should not be ground for a new trial. There is no evidence that the intestate actually knew he was required to remain at the switch. The mere receipt of the book of rules by the intestate certainly does not tend to prove his knowledge of a rule that is not shown to have been in the book. Simpson, the conductor of intestate's train, testified as follows: "When I went to the office Holland was coming from the switch towards the caboose. I saw him change the switch and lock it to the main line. After my train went in, I saw him do that. * * * Q. Did you leave anybody especially in charge of it, except as regulated by the rules? A. No more than the instructions I gave to the man when I left Raleigh that morning, always when he headed in a switch to change it and lock it to the main line, and in my absence to look out for the safety of the train. * * * Q. How far was Holland from the switch when you last saw him? A. I guess he was seventy or eighty feet, coming towards the caboose. He was about where the frog would be, seventy or eighty feet from the switch tank coming towards the caboose. * * * I did not give him any instructions as to this certain switch, because I did not know that we were

going to use that switch. My instructions were to look after the switches in my absence. * * * Q. You say you saw Mr. Holland go around there and throw the switch back to the main line? A. He got off the caboose at the switch and threw it to the main line and locked it. Q. That was done in your presence? A. Yes, sir. Q. And that was the last time you saw Holland at the switch? A. Yes, sir. Q. When you saw him he was going back to the caboose? A. Yes, sir." This evidence shows that the intestate was not told to remain at the switch, but was told to lock it to the main line; that he did so in the presence of his conductor and came to the caboose with the assent of his superior officer, or at least in his presence and without any objection on his part; that no one saw him go near the switch again; and that two trains thereafter passed the switch in safety. The instruction of his conductor to "look after the safety of the train," if construed in the light most favorable to the plaintiff, as should be done on a motion for an adverse direction of the verdict, might mean that the intestate must *go back* and look after the train. We must remember that the intestate is dead, killed by the act of the defendant, and is not here to tell his story. Many a dead man is made to bear a living sin.

The opinion of the Court says that it was error to give the following instruction: "If the jury should find from the evidence that the plaintiff's intestate was an employee upon the defendant's train and was killed in the collision of the defendant's trains in the day-time, there is a presumption of negligence upon the part of the defendant; and in that case the burden is thrown upon the defendant to disprove negligence on its part." The Court seems to admit that it is correct as a general principle of law applicable equally to employees as to passengers; but that it is not applicable to this case on account of some assumed state of facts contrary to

the verdict of the jury.  I cannot concur in any such opinion.  The opinion says that the following instruction should have been given: "If you answer the first issue 'No' you need not answer the other issues; that if you answer the first issue 'Yes,' then under all the evidence you will answer the second issue 'Yes,' and the third issue 'No.' "

The Court again says that "the intestate had full notice of Rule J, and bases its opinion upon such assumption of notice. I would be very glad to have evidence of this fact pointed out to me, as I have not been able to find it.  It is not shown to be in the book of rules, receipted for by the intestate, and I find no evidence whatever offered either by the plaintiff or the defendant that the time-table was ever issued to the intestate, or even ever seen by him.  Moreover, the above instruction included the evidence of the defendant, the credibility of which can never be assumed in directing a verdict against the plaintiff.  This goes far beyond *Neal's case.*

I am aware that this was held in *Dunn v. Railroad,* 126 N. C., 343; but I am not aware of any other case to the same effect.  The contrary doctrine that no negligence can be considered that is not directly or concurrently the proximate cause of the accident has been since fully recognized.  In the recent unanimous opinion in *Butts v. Railroad,* 133 N. C., 82, this Court held that: "An instruction which makes the liability of the defendant depend on its negligence, without regard to whether such negligence was the proximate cause of the injury, is erroneous."  *Edwards v. Railroad,* 129 N. C., 79; *Curtis v. Railroad,* 130 N. C., 437.  It will scarcely be contended that any difference in proof, either as to nature or amount, can be required to establish the negligence of the defendant than that of the plaintiff.  Both are entitled to the benefit of the same principles of evidence and the equal enforcement of the law.

The doctrine of the last clear chance would seem to apply to the action of the engineer on the incoming train, as he violated the rules of the company in passing the switch without receiving the "all-right signal," as required by Rule J, and without "knowing that such switches are right before passing over them," as required by Rule 47-I. Moreover, it would seem to be an act of continuing negligence on the part of the defendant to construct a side-track and switch at the end of a curve where they could not be seen in time to stop. In the equal administration of the law it would seem that rules binding upon the intestate would be equally binding upon the defendant and its other agents.

CLARK, C. J., concurs in the dissenting opinion of DOUG-LAS, J.