HOLLAND v. RAILROAD.

(Filed December 22, 1906).

*Railroad—Flagman—Contributory Negligence.*

In an action to recover damages for the alleged negligent killing of plaintiff's intestate from a rear-end collision on a siding, where the evidence shows that the intestate was employed by defendant as flagman, and that it was his duty, after his train had taken the siding, to lock the switch to the main track and stand near the switch and protect it and give the necessary signals to approaching trains so as to safeguard his own train, and that he did not perform this duty, and his negligence in this respect was the immediate and sole cause of the collision by which he lost his life, the Court did not err in instructing the jury, if they believed the evidence, to find for the defendant.

ACTION by M. H. Holland, administrator of H. L. Holland, against Seaboard Air Line Railway Company, heard by *Judge Fred Moore* and a jury, at the September Term, 1906, of the Superior Court of MOORE.

From a judgment of nonsuit, the plaintiff appealed.

*W. J. Adams* and *Seawell & McIver* for the plaintiff.
*U. L. Spence, J. D. Shaw* and *Murray Allen* for the defendant.

WALKER, J.  The plaintiff brought this action to recover damages for the alleged negligent killing of his intestate. The evidence introduced by him tended to show that, in October, 1902, a freight train known as Extra 578, which was proceeding southward from Hamlet, took the siding at Rockingham, and a short time thereafter a passenger train, which was also proceeding southward at a fast rate of speed, ran upon the siding, collided with the caboose, or shanty car, at the end of the freight train, and killed the intestate, H. L. Holland.

The defendant's evidence tended to show that the intestate was employed by the defendant on Extra 578 as flagman, and it was his duty, as such, not only to set the switch to the main track and lock it, so that trains going south could pass on the main line by the switch in safety, but to stand near the switch and protect it from outside interference and give the necessary signals, until the expected trains had passed that point. That the said duty he wholly failed to perform, and his negligence, in this respect, was the immediate and sole cause of the accident.

The usual issues as to negligence, contributory negligence, the last clear chance and damages were submitted to the jury. At the close of the evidence, the Court intimated that it would charge the jury "that if they believed the evidence as to the manner in which the intestate came to his death, the presumption of negligence which the law raises from the fact that one is killed by the collision of trains is rebutted, and they should answer the first issue (as to negligence) 'No,' " and "if they believed the evidence relating to the alleged negligence of the plaintiff's intestate, they should answer the second issue (as to contributory negligence) 'Yes.' " The Court also instructed the jury to answer the third issue (as to the last clear chance) "No."

There is no material difference between the case as now presented and the same case as it was when before us at a former term. *Holland v. Railroad,* 137 N. C., 368. But if there is any difference at all, it consists only in this, that at the former trial the plaintiff introduced the rules of the defendant company, showing what was the duty of the intestate with reference to the switch; and this further difference, that there is in this record clear and undisputed proof that the intestate had full knowledge of Rule J., which required him, after his train had taken the siding and cleared the main track, to stand near the switch and give the signals

to approaching trains. It appears, therefore, from all of the testimony, that his duty was to lock the switch to the main track and then to stand by and see that the proper signals were given to trains moving on that track, so as to safeguard his own train. The evidence, if believed, shows that he did not perform this duty, and that in consequence of his failure to obey the rules, of which he had full knowledge, and the instructions of his superior, the conductor, to him when leaving Raleigh, the terrible disaster resulted by which he lost his life.

The very facts we have here, or rather those which the evidence, if believed, tends to establish, are the same upon which this Court adjudged, in the former appeal, that the plaintiff could not recover, because his own negligence was the proximate cause of his death, and not the negligence of the defendant. We do not perceive any reason for reversing or modifying that conclusion, and especially should we not do so when the case for defendant is, if anything, stronger than it then appeared.

A party who loses in this Court cannot review its decision by a second appeal, as the proper and only way is by a petition to rehear. *Kramer v. Railway Co.*, 128 N. C., 269; *Pretzfelder v. Ins. Co.*, 123 N. C., 164; *Perry v. Railroad*, 129 N. C., 334; *Wright v. Railway Co.*, 128 N. C., 77; *Setzer v. Setzer*, 129 N. C., 297; *Jones v. Railroad Co.*, 131 N. C., 135; *Green v. Green*, at this term. There may perhaps be an exception to this well-settled rule, but if so, this case is certainly not within it.

In the former appeal, we said: "All things considered, the question at last is, Was the situation a safe one, if the intestate had kept the position assigned to him by the defendant at or near the switch, so that he could prevent any interference with it and guard against any resulting danger? If so, his failure so to act was the proximate cause of his death,

as it was the sole efficient cause. The company had provided a perfectly safe method for the management of its train at that point, which if adopted would have saved the life of the intestate. As he alone disregarded it, and the engineer on No. 33 was not required to anticipate this negligence, his untimely death is referred by the law to his own fault in leaving his post of duty at a critical moment. If he did not leave the switch open, but it was changed by some one else after he left his place, or even by any accident, it could have been readjusted to the main track by him if he had been there, and No. 33 would have passed and not have taken the siding." *Holland v. Railroad,* 137 N. C., 373. And again, at page 374: "Plaintiff's witness, Conductor Simpson, testified that he instructed Holland that morning to change the switch and lock it to the main line when he headed in and, in his absence, to look out for the safety of the train. There was but one possible thing to do after locking the switch to the main line in order to further protect his train, which was on the siding, and that was to watch the switch and see that it was not changed by any one else so as to endanger his train. The conductor further stated that he instructed him to look after the switches in his absence. If he had done this the accident would not have occurred. There was only one inference to be drawn from the evidence, and that was against the plaintiff."

We can only add to what is there said, that the intestate was the sentinel appointed by the defendant to watch and guard the switch and forewarn incoming trains of any danger. He was the one man to whose keeping had been committed the safety of his comrades in the company's service and of his employer's property, and he was more responsible for it than any one else. He failed in the performance of his duty at the very moment when his obedience to orders and his vigilance were most required to prevent the resulting

catastrophe. His negligence was ever present and the efficient and, indeed, dominant cause of his injury and death, reaching to the effect, and therefore·proximate to it. To subject the defendant to a recovery in such a case does not seem to be equitable, and would certainly contravene established principles of law. Plaintiff's death was caused, not by the defendant's negligence, but by his own disobedience of instructions. *Whitson v. Wrenn,* 134 N. C., 86; *Hicks v. Mfg. Co.,* 138 N. C., 319; *Stewart v. Carpet Co.,* 138 N. C., 60; *Biles v. Railroad,* 139 N. C., 532.

We find no error in the record, and the judgment is affirmed.

No Error.