BESSIE COLE v. CITY OF DURHAM, STRAUSS-ROSENBURG COMPANY, AND THE CAROLINA POWER AND LIGHT COMPANY.

(Filed 30 October, 1918.)

1. **Negligence—Delivery of Coal—Raising Door in Sidewalk—Pedestrians.**

   The owner of a store in a populous city, to which coal was to be delivered by a dealer, instructed his employee to go into the cellar to unlock the door over a coal hole on the sidewalk where pedestrians were constantly passing. After the employee had done so, and, receiving no answer to his signal to the driver of the coal wagon, who was supposed to open the cellar door and warn pedestrians, he. suddenly and, without warning of any kind to the plaintiff, raised the door and threw her down, causing the injury complained of in the action: *Held*, evidence of actionable negligence on the part of the employee of the store, for which the owner is. responsible.

2. **Same—Dealer in Coal—Principal and Agent.**

   A dealer in coal undertook to deliver it at a store in a populous part of the city, through a coal hole, covered by a door flush in the sidewalk where pedestrians were constantly passing. The city ordinance required that in such instances some one should be stationed to warn the passersby. There was evidence tending to show that the door was pushed open from beneath, by an employee at the store, as the plaintiff was passing, causing her, without warning, to fall, to her injury, though the dealer's driver was standing near, whose duty it was to give the warning and to raise the door after it had been unfastened from beneath: *Held*, sufficient to take the case to the jury, upon a motion to nonsuit, of the actionable negligence of the driver in causing the injury, for which the dealer, his principal, would be liable.

3. **Negligence—Delivery of Coal—Coal Hole—Notice to Pedestrians—Principal and Agent.**

   Where an ordinance of the city requires that notice be given to pedestrians that the doors to a coal hole in the sidewalk are about to be opened for the purpose of delivering coal at a store, and the owner of the store is present at the time and depends upon the driver of the delivery wagon to give this notice, whose failure to do so causes an injury to a pedestrian, the negligence of the driver will be imputed to the owner of the store.

4. **Same—Contributory Negligence—Evidence—Questions for Jury—Trials.**

   There was evidence in this case tending to show that while the defendant dealer was making delivery of coal at a store, the plaintiff stepped upon the door to the coal hole flushed with the sidewalk, and was injured by the door being suddenly, and without warning, pushed up from beneath by the defendant purchaser's agent, an ordinance of the city requiring that some one, under the circumstances, be placed there to warn the pedestrians; that the defendant's driver was present, in his "business garb,"

19—176

with the delivery team, which, the defendant contended, should have
caused the plaintiff to look out for her own safety: *Held*, if this were
evidence of contributory negligence on the plaintiff's part, still this ques-
tion, including that of proximate cause, should be submitted to the jury,
and a motion to nonsuit was properly denied.

**5. Negligence—Joint Tort Feasors—Evidence—Questions for Jury—Trials.**

Where, in the delivery of coal by means of a coal hole in a cellar, a
pedestrian is injured by stepping upon the door, flushed with the sidewalk,
which was suddenly pushed up from beneath, without warning and in vio-
lation of the city ordinance, and there is evidence of negligence on the
part of the coal dealer and of the purchaser of the coal in this respect, the
apportionment of the liability between them does not affect the pedes-
trian's right to recover against them both, as joint tort feasors, and the
issue as to their actionable negligence was properly submitted to the jury.

**6. Negligence—Inherent Danger—Independent Contractor—Contracts.**

Where the dealer delivers coal to his purchaser at the latter's store in a
populous city, through a coal hole in the sidewalk of one of its principal
business streets, where pedestrians are constantly passing, and a pedes-
trian is injured by stepping upon the door to the coal hole, flushed with
the sidewalk, which was suddenly and, without warning, pushed up from
beneath, contrary to the city ordinance, the delivery of the coal in this
manner is so inherently dangerous that the dealer may not escape lia-
bility by showing that he had contracted for the delivery of the coal with
another, who bore the relation to him of an independent contractor. As to
whether such relationship existed, under the evidence in this case. *Quære?*

BROWN, J., dissenting as to the defendant, Carolina Power and Light Com-
pany.

ACTION tried before *Bond, J.,* and a jury, at March Term, 1918, of
DURHAM.

This action is brought by the plaintiff against the city of Durham,
Strauss-Rosenberg Company, and the Carolina Light and Power Com-
pany to recover damages for injuries sustained by falling into a coal
hole about four by six feet in the sidewalk on Main, the principal busi-
ness street of the city of Durham. On 30 July, the plaintiff was going
from her home about 8 o'clock in the morning to C. W. Kendall's store,
where she worked as a milliner. The evidence discloses that when
plaintiff reached the point in front of Strauss-Rosenberg Company's
store some one passed her on the north, and that she stepped a little to
the south upon the steel doors that covered the coal hole and constituted
a part of the sidewalk, and when she did so the door was pushed up from
underneath and she was thrown to the ground and injured. That at
the time she approached the coal hole a member of the firm of Strauss-
Rosenberg Company was standing in the front door of the store and a
colored man in workman's garb was standing east of the coal hole doors.
That the defendants Strauss-Rosenberg Company had purchased from
the defendant Power Company five tons of coke to be delivered in the

basement of said Strauss-Rosenberg's store about 30 July, the date of the injury. That the Power Company had employed Allen Jeffries to make the delivery of the coke, and that the colored man standing near the coal hole was the son of Allen Jeffries, who had been sent with a load of coke. The son (George Jeffries) told one of the firm of Strauss-Rosenberg Company that he had a load of coke to unload, and a young 15-year-old boy was sent to the basement to unfasten and open the coal hole doors, and this fact was known by defendant Rosenberg and the colored man, George Jeffries, who was sent to deliver the coke and who was standing just east of the doors when the injury happened. It was not contended by plaintiff that the coal hole doors were dangerous when closed.

Plaintiff testified, in part, as follows: "I had to step on the door to pass the person I was meeting. I turned to get out of the way of some one and stepped on this coal hole door. I kept my left foot on the sidewalk until I raised it up and it went under the edge of the door (demonstrating to jury). I could not tell you whether I was in the middle of the sidewalk coming down the street until I got to the doors or not. I was walking so that I had to step on that door. If I had kept straight on and had not turned I would have passed by the door, I suppose, without stepping on it. Some one passed me, though. I stepped my right foot on the door and it bumped me up so I had to fall. The first time I stepped on the door, to my knowledge, I put my right foot on the door and it bumped me up, and I tried to catch hold with my left foot and it caught under the door and threw me. . . . Before I fell I saw the coke wagon standing there, and that is why I looked around; that was before I reached the door. I knew they were to put the coke in that hole, of course. The doors were down when I stepped on them; no one was standing there to open it. The man didn't tell me to stay off. The man was standing where I said he was when I first saw him. I don't know that I saw him when I stepped on the door. If they had been opening the door I would not have stepped on it. I saw a man standing there; he was standing on the sidewalk at the southeast corner of the door; the door opened back towards him. . . . When Mr. Strauss came to see me after the injury he told me he had sent his boy to unlatch the door and the boy said he pushed the door up. I have stated as a matter of fact that the doors were flat down when I first stepped on them; they bumped up under my feet. The wagon was backed up to the curbing and the driver was standing on the sidewalk to the east of the doors; he was not standing on the doors, but was standing on the sidewalk to the east of the doors. A few seconds before I stepped on the door I saw him standing up straight. If he had leaned forward to catch hold of the door I certainly could have seen him; I could have

seen the motion of him if I had been looking down on the ground. It would have taken a mighty long man to have reached over there to catch on this door from where I saw him standing at that time and raise that catch; he could not have done it without my seeing him. The man or lady whom I spoke of as coming from the east as I was coming from the west caused me to step on the side to let them pass."

The jury returned as their verdict upon the four issues submitted by the court that the defendants, except the city of Durham, were guilty of negligence as alleged in the complaint; that plaintiff was not guilty of contributory negligence, and then assessed her damages at $5,000.

There was in force at the time of this occurrence an ordinance of the city of Durham as follows: "Every owner or occupant of a house on a street which has a cellar door or vault in a public footway shall keep the same in good repair and shall keep the door closed at all times, or a guard stationed there to warn the public." A penalty was attached for disobedience of it.

The court entered judgment of nonsuit as to the city of Durham and judgment upon the verdict as to the other defendants, and the latter separately appealed.

*Brawley & Gantt* and *Scarlett & Scarlett for plaintiff.*
*R. O. Everett and J. S. Manning for defendant Strauss-Rosenberg Company.*
*William G. Bramham for defendant Carolina Power and Light Company.*

WALKER, J., after stating the case: The record in this case is quite voluminous and the briefs lengthy, but very ably prepared, and have been of great assistance to us in eliminating from the great mass of testimony and argument the real questions at issue, which are few and, as we think, free from any difficulty.

We may say in the beginning that there is no complaint from any one of the coal cellar and its doors either as to construction or the material used. The owner, in this respect, had fully complied with the law and his duty in the premises in making the opening in the sidewalk both safe for the public and practically convenient for those using it as a receptacle for the storage of coal, which is the purpose for which it was designed.

The simple facts are that the plaintiff was in the rightful use of the sidewalk in this populous and thriving city, coming from her home to her place of business about 8 o'clock in the morning. As she approached the doors of the cellar in the sidewalk, near its middle, over which pedestrians constantly passed and repassed, she met some one walking

on the same side that she was, and·this caused her to step a little to the south side, with her right foot on the door of the cellar, and as she did so it bounced up and threw her into the street in a sitting posture. She stated that the door was pushed up suddenly and unexpectedly, as it was "flat down" when she stepped upon it. No one gave any signal or warning of danger, or that the door was then being used and would be raised by a man in the cellar or any other person just at that time, and there is evidence to show that she felt justified in supposing that she could pass over the doors safely. As there was a motion for non-suit, we must assume all evidence in her favor to be true, and we need, therefore, refer to so much only as tends to prove an actionable wrong to her.

George Jeffries, who was driver of the truck filled with coke, was near the cellar doors, but was not raising them, or if he did assist in opening the doors by raising them from the outside while Raymond Shives, servant of defendants Strauss-Rosenberg Company, who was in the cellar, was pushing them from below, he gave plaintiff no warning. of the impending danger, and by his inaction led her to believe that no harm would come to her if she proceeded on her way.

There is evidence that one of the defendants, Charles Rosenberg, had been told by George Jeffries, the driver, in the store, that he had coke in the truck at the front to be placed in the cellar, and that he could not raise the doors, and Rosenberg, who was in the gallery of the store, then "called down" to Raymond Shives and ordered him to the basement to unlock the door, which order he obeyed, and in doing so he unlocked the door and, receiving from the man on the sidewalk no answer to his signal that the door was unlocked, he raised the doors him-self.

This was manifestly negligence on his part, and for it his employers are responsible. The mere fact that he got no answer from the man supposed to be in position on the sidewalk to raise the doors was some notice to him that the latter was not on guard, and that it would be dangerous to raise the door, and it proved to be so in this case. He could not know the situation above him with the doors between him and the surface of the sidewalk, and it was not only negligence, but reckless-. ness, to have acted as he did under the circumstances, as it was the con-tention of the defendants Strauss-Rosenberg Company, and there was proof to support it, that the doors were to be raised by some one on the sidewalk and not from the basement.

Raymond Shives was seen in the cellar when the cellar door was ajar. It is true that one, or perhaps two, of the witnesses testified that George Jeffries did raise the door, but this, if true, is not necessarily incon-sistent with the fact that Raymond Shives pushed it up from the cellar,

for one may have pushed while the other pulled, as it is apparent that in this operation they were expected to act in concert—one to unlatch the door and the other to raise it. George Jeffries may have been a little slow in his movements. If he had been at his proper place and in the performance of his duty of raising the door at the right time he would by his very act have warned those approaching the doors on the sidewalk of the danger.

We have no doubt of the negligence of Raymond Shives. His act was *per se* dangerous and almost sure to cause injury to pedestrians on the main street in that populous city at an hour, too, when the street was much used by those going from their homes to their daily tasks. As to George Jeffries, if he was there, as the evidence shows he was, to lift the doors and set them perpendicular to the sidewalk, by the use of the horizontal iron rod, he should have given notice of the fact to those using the sidewalk of his purpose.

The ordinance required that the man in his position should stand on guard and inform the public when the doors were about to be used, so that they might be avoided. Its language is that the doors shall be kept closed at all times, or a guard stationed there to warn the public. This notice must be given before the doors are opened, or in time for the public to keep away from them. If that had been done in this instance the lady would not have received her injuries, for she says that she stepped on the door when it was closed, and, of course, if it had been kept in that condition she would not have been harmed, or if she had been properly warned the same result would have followed.

Before leaving this part of the case, we may say that if Mr. Rosenberg thought that because George Jeffries was there it was a sufficient compliance with the ordinance, and he relied on Jeffries to give the necessary warning to the public, it is the misfortune of his firm that Jeffries did not do so, and not the fault of the plaintiff, and they must take the consequences of his neglect.

The defendants, though, contend that the plaintiff saw Jeffries on the sidewalk near the doors, knew that he was driving the truck, as he had on "business garb," and also knew that the coke would be put in the cellar, and that, knowing all of this, it was her clear legal duty to be forewarned and not step on the door, and that, as a matter of law, she was guilty of contributory negligence which approximately caused her terrible injuries. But even if this be so, it leaves out of consideration other important facts and circumstances which she is entitled to have weighed by the jury in passing upon her negligence, which makes it a question for the jury to be tested and determined under the rule of the prudent man. She testified that the doors were "flat down" when she stepped upon one of them, and it was raised after she got upon it, and

that Jeffries did not stoop or attempt to open the doors, nor was he near enough to do so. Her language is "The man was standing straight and beyond the door. . . . It was not but a little while after I saw him until I fell. He didn't stoop. I didn't watch him all the time, but I saw him standing there. I did not stumble on the door, it was raised under my foot; the door was pushed up and me standing on it. My right foot was on the door and the door pushed up. I could not tell where my left foot was."

In this view of the evidence, and it could be presented much more strongly for the plaintiff should more of it be added, it was proper to submit the question of contributory negligence to the jury if there was any evidence of it at all. Her freedom from negligence more clearly appears when we consider that she saw one of the defendant firm, Mr. Rosenberg, in the door of the store as she passed, and neither he nor George Jeffries warned her not to step on the cellar door, though they both knew that Raymond Shives had gone down to open the door. They must have deemed it safe for the public to use the door as a part of the sidewalk, or surely they would have been on the alert and given proper notice of the danger. Rosenberg denied that he was in the door, and Strauss was not there, so he testified, but this apparent conflict in the testimony was a matter for the jury to consider. The city, by its ordinance, had provided for a warning and a safeguarding of the public by having a man stationed there for the special purpose of giving it; but this was not done, or if George Jeffries was there for the purpose or relied on by Rosenberg to perform this service, he utterly failed to do so, and he might as well have not been there as to thus fail in the duty assigned to him. *Holland v. R. R.*, 143 N. C., 435, 438 (*S. c.,* 137 N. C., 373, 374). We said there that where one is required to watch and guard at a dangerous place to prevent injury to others, which resulted by reason of his omission to do so, it is negligence to fail in this duty, and the injury is referred by the law to the neglect to watch and forewarn as its proximate cause. 143 N. C., at p. 438.

Our conclusion is that there was evidence of the joint negligence of the two defendants, the Power Company and Strauss-Rosenberg Company, and that it was properly and correctly submitted to the jury. The conduct of the plaintiff would not have warranted an instruction that, upon the admitted facts in regard to it, she was guilty of negligence which made her, in law, the sole author of her own injury. The case was, without doubt, one where the jury was required to pass upon the evidence and find the ultimate fact of negligence under the instructions of the court. We have so far considered only the evidence in the case, as we think that whether the defendants were jointly negligent is largely a question of fact. It may be proper, perhaps, to refer gener-

ally to the principles of law which are involved, although they are well settled.

The case of *French v. Boston Coal Co.* (and *Same v. Converse*), 81 N. E. (Mass.), 265 [11 L. R. A. (N. S.), 993], is much like this one in its facts and principles, and the Court there said: "It was the duty of Elisha S. Converse (owner of the premises) and his servants and agents to see that the coal hole, when used for the purpose of putting in coal for heating purposes, was properly guarded and protected, so that persons passing along the sidewalk and in the exercise of due care would not be liable to fall into it. They were not relieved of this duty by the fact that the coal company was also using it for the purpose of putting in the coal which had been ordered by them. *Poor v. Sears,* 154 Mass., 539 (26 Am. St. Rep., 272; 28 N. E., 1046); *Blessington v. Boston,* 153 Mass., 409 (26 N. E., 1113). Similarly, the coal company owed a like duty to those passing along the sidewalk, and was not relieved of it by the obligation which ·rested upon the defendant Converse and his servants and agents. There was evidence warranting a finding that the servants of each. defendant were negligent in the performance of this duty. The jury could have found that the servants of the defendant Converse knew or ought to have known that coal was being put in, and that the cover was laid back and the hole was open, but that they took no precautions to warn or protect travelers from falling into it. They could also have found that, notwithstanding their testimony to the contrary, the men who were putting in the coal for the coal company took no precautions to guard against such an accident as happened to the plaintiff. The question of the plaintiff's due care was rightly left to the jury. It could not be ruled, as matter of law, that he was not in the exercise of due care."

It can make no material difference in the result whether Miss Cole fell in the hole which was opened by raising its covering, or was lifted on one of the door lids and catapulted into the street, except in the degree of injury to her. As it was, she was severely and most painfully hurt, having sustained a serious fracture of both wrists and a permanent injury, according to the medical testimony. The danger of this place consisted in its being on the sidewalk of the principal street of this city, where its inhabitants passed every minute of the day, and there was a constant and continuing menace to their safety unless it was properly guarded and sufficient warning given when it is about to be used, and whether it would constitute a pitfall or a stumbling-block is beside the question. The defendants are jointly and severally responsible, because they together caused the injury, and, as between them and the plaintiff, the law will not apportion the liability. *Gregg v. Wilmington,* 155 N. C., 18.

In *Chicago v. Robbins,* 2 Black (N. S.), 418 (17 L. Ed., 298); *Robbins v. Chicago,* 4 Wall. (N. S.), 657 (18 L. Ed., 427), and *Holman v. Stanley,* 66 Pa., 464, it was held that the owner of the abutting property could not escape liability to the injured party by showing that the work was being done by an independent contractor, who negligently left the opening in the sidewalk unguarded. See, also, *French v. Boston Coal Co., supra,* at p. 994, and note.

In *Chicago v. Robbins, supra,* it was held to be essential that in regard to an area in the street or-sidewalk, every possible precaution should be used against danger, and that the owner of the lot cannot escape liability by letting work to another or independent contractor who is negligent in doing the work which proves to be harmful to those rightfully using the street. The following propositions were substantially stated and decided in *Robbins v. Chicago, supra,* as appears from the syllabus of the case to be found in the report of it at page 427 in 18 L. Ed. of U. S., S. C. Reports: "The principle for whom the work was done cannot defeat the just claim of the corporation or of the injured party by proving that the work which constituted the obstruction or defect was done by an independent contractor. Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the employer is not liable. Where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party."

In this case, the defendants were doing this work together through their respective servants or employees, and they both did it negligently, whereby this plaintiff was injured, not being in fault herself, as the jury have determined. The defendants, who contracted for the purchase and delivery of the coke in the coal vault, are undoubtedly, legally and morally, liable for such negligence unless they can shift the responsibility clearly upon some one else, and this principle is necessary for the safety of the public especially in populous places. As we will demonstrate hereafter by the authorities, they have failed to do this, and therefore are liable. *Hart v. McKinna,* 106 App. Div. (N. Y.), 219 (4 N. Y. Supp., 216). The other defendant, who was to deliver the coke in the coal vault by lifting the door which covered it, failed in its duty to the public by not giving proper warning against an impending danger of which its servant had knowledge and the public none. When plaintiff approached the door, it was at rest, and she was lifted, as she stepped upon it, by its being pushed up from below, and without any previous notice to her that this would be done or that the door would be moved

at that time in any way. The mere fact that the driver was standing near by with his truck, even if some notice of the fact, has been held by the jury not to have been a sufficient warning.

There is another contention, which is that the Power Company is not liable because it employed Allen Jeffries to haul the coke to the store on the truck and unload it into the basement, and in this connection the Power Company pleaded that Jeffries was an independent contractor, and his negligence, or that of his driver, George Jeffries, was not imputable to it. Conceding, for the sake of argument, that but for the nature of the work to be done he would be an independent contractor and liable solely for his own negligence, we are of the opinion that the work was of a hazardous character or inherently dangerous, as it is said, and that such a plea cannot avail the Power Company.

Accepting as correct the definition of intrinsically dangerous work as stated in the cases cited by this defendant's counsel (*Vogh v. Geer,* 171 N. C., 672 (676); *Scales v. Llewellyn,* 172 N. C., 494 (497); *Laffrey v. Gypsum Co.,* 83 Kans. 347), we yet hold that the work to be performed in this instance was of an inherently dangerous character. It was to be done on the sidewalk of a populous city, at a place where people were constantly passing to and fro, and required the raising of the doors of a cellar practically in the middle of the sidewalk, thereby leaving a hole therein, with obstructing doors, above a deep basement. Both parties to the contract of hauling knew the situation and what was to be done. It is not like the case where baggage merely was hauled from one place to another to be deposited there (*Singer v. McDermott,* 62 N. Y. Supp., 1086), which is safe in itself, and only becomes dangerous by any negligence of the driver or those in charge of the wagon. Here the work was so dangerous that the city had passed an ordinance to safeguard the public and to minimize the danger, and to prevent it if possible. It is a case where the work itself is dangerous, and care must be taken to render it harmless to the public to the extent that this can be done. It is the opposite of the other case we have put. Everybody will say it is dangerous to open a hole in the middle of a street or sidewalk by raising a door where people may stumble or fall in, even when exercising care themselves, and which requires that proper caution be taken to prevent its natural tendency to do harm from actually resulting in injury to others.

In *Davis v. Summerfield,* 133 N. C., 325 (328, 329), quoting from *Bower v. Peate,* 1 Q. B. Div. (187-6), 321, the Court says: "The answer to the defendant's contention may, however, as it appears to us, be placed on a broader ground, namely, that a man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor might be expected to arise, unless means

are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing some one else—whether it be the contractor employed to do the work from which the danger arises, or some independent person—to do what is necessary to prevent the act he has ordered to be done from becoming wrongful. There is an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted."

It was held in *Railroad Co. v. Morey,* 47 Ohio St., 207, that "One who causes work to be done is not liable, ordinarily, for injuries that result from carelessness in its performance by the employees of an independent contractor to whom he has left the work, without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case a person causing the work to be done will be liable though the negligence is that of any employee of the independent contractor."

The Court said in *Railroad Co. v. Moores,* 80 Md., 352: "Even if the relation of principal and agent or master and servant does not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated by him as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to a third person or the public in the execution of the work." See, also, *Waters v. Pioneer Fuel Co.,* 55 N. W. (Minn.), 52; *Radel Co. v. Borches,* 147 Ky., 506 (39 L. R. A. (N. S.), 227). Cases recently decided by this Court are to the same effect as *Summerfield's case* and the others above cited.

In *Carick v. Power Co.,* 157 N. C., 378, 381, it is said, quoting from *Bridge Co. v. Steinbach,* 61 Ohio St., 375 (76 Am. St. Rep., 675): "The weight of reason and authority is to the effect that where a party is under a duty to the public or a third person to see that work that he is about to do or have done is carefully performed so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability in case it is negligently done to another's injury."

And addressing itself to the proposition in a way more clearly related to the facts of our case, it was further said: "The governing authorities of a town may not absolve themselves of the duty of proper care

and supervision as to the condition of its streets and sidewalks, and when they authorize work to be done on them which is essentially dangerous or which will create a nuisance unless special care and precaution is taken, they are chargeable with a breach of duty in this respect, if care is not taken, whether the work is being done by a licensee or by an independent contractor. . . . The same principle holds as to the obligations of licensees and independent contractor doing work of the kind suggested, that is, when the work that is being done for their benefit or by their procurement is of a kind to create a nuisance unless special care is taken, they are charged with the duty of properly safeguarding it, and may not relieve themselves by delegating the duty to others," citing numerous cases, and among them *Bailey v. City of Winston,* 157 N. C., 252, where the matter is fully discussed.

An independent contractor is defined to be one "who undertakes to do specific pieces of work for other persons without submitting himself to their control in the details of the work, or one who renders the service in the course of an independent employment, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. 1 Shear & R. Neg., 164, 165. So it is said that an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work. *Powell v. Construction Co.,* 88 Tenn., 692 (13 S. W. Rep., 691)." *Waters v. Pioneer Fuel Co., supra.* See, also, *Denny v. Burlington,* 155 N. C., 33; *Hopper v. Ordway,* 157 N. C., 125, and *Johnson v. Railroad Co., ibid.,* 382, and the cases cited therein.

If the defendant Power Company has, by the proof, brought itself within the definition given, as to the liability of an employer who is operating through an independent contractor, the rule does not apply to the relation existing between it and Allen Jeffries at the time the injury was received by the plaintiff, according to the principles stated in the authorities we have cited. If the work to be done is dangerous only by reason of the absence of proper care in doing it, the doctrine as to an independent contractor may apply, but if it is dangerous in itself and will continue to be so, and probably cause injury unless reasonable care is taken to render it harmless to others who are themselves in the exercise of due care, it does not apply.

The cases cited by the Power Company in its brief may be distinguished from this one, and if any one of them really conflict with the cases upon which we have relied they are, in our opinion, opposed to the great weight of authority. Our decisions clearly support the view we have taken. We have not discussed the question whether Allen

KING v. R. R.

Jeffries was an independent contractor, if the doctrine applied to a case of this kind.

Our conclusion as to this defense renders it useless to discuss the question as to the insolvency of Allen Jeffries or the other exceptions of this defendant or those 'of its codefendant, as the points we have considered are the dominant ones in the case. If there was error regarding other matters it was harmless, but we do not mean even to intimate that there was any such error. In all essential respects the case was correctly tried.

No error.