This action was brought to recover damages to plaintiff's land and growing timber by fire, alleged to have been negligently set out by defendant's engine, operated on a lumber road constructed for the purpose of hauling the logs cut from plaintiff's land. The plaintiff had sold certain timber trees growing upon his land to one Hammer, who had conveyed them to the defendant company, and had sold him, Hammer, a right of way one hundred feet wide through his land in fee for the purpose of operating a railroad thereon; this right of way had also been conveyed to the defendant by Hammer. The defendant, denying all allegations of negligence and any liability to the plaintiff, offered the following evidence to show that if the alleged negligent acts were done as charged, they were caused and done by one Ellis, an independent contractor. H. C. McKeel, the general manager of defendant, testified: *Page 287 
"J. W. Ellis was operating road. I made contract with Ellis for company to log certain tracts of timber, contracts indefinite or until he wound up these tracts of timber. I employed Ellis to put logs to mill; was to pay so much per thousand; he was a suitable man; had been in the business ten years. Defendant had nothing to do with his teams, road or hands; he controlled them. I had nothing to do with directing hands. Defendant company furnished locomotive, iron and cars. Ellis built roads. . . . Ellis was to cut timber from lands of plaintiff, Sam Thomas and others (naming them). Ellis constructed tramroad; timber was owned by company; he contracted to deliver logs grounded at $3.25 on tram tracks; no specified time; defendant had ten years to get timber off. . . . If Ellis was to leave timber in woods I would tell him to haul it in; I am very seldom in woods." T. B. Hammer also testified: "I am secretary and treasurer of defendant company; Ellis was to deliver logs for $3.25; company to furnish engine and iron; afterwards agreed to pay Ellis 50 cents to deliver logs to mill; defendant had not control over logging business; Ellis had full control. . . . Contract was to cut timber from tracts. Engine, iron and cars owned by defendant." Upon this evidence his (353) Honor, at the request of defendant, charged the jury as follows:
"First. That if the jury shall find from the evidence and by the greater weight thereof that the defendant company employed J. W. Ellis, a competent and suitable person, to do its logging, and by the terms of the contract the defendant company furnished the rails, engine and tram cars, and the said Ellis furnished the logging tools and outfit, mules and wagon, cut the crossties, and constructed the tramroad, and was to employ at his own expense the men and pay them, and that the lumber company did not supervise the cutting and had no general control in respect to the manner of doing the work or the agents employed to do the work, and had no right to issue orders which the contractor was bound to obey, and paid the contractor three dollars and twenty-five cents for the hauling, cutting and delivering the timber to the water, and the defendant was not interested in the steps of the work as it progressed, but only in the ultimate result, then the defendant would not be liable, however much the contractor would if he be negligent."
The plaintiff excepted. The following issues were submitted to the jury: First issue: Did the defendant negligently set fire to and burn the lands and property of the plaintiff, as alleged in the complaint? Second issue: What damage, if any, has plaintiff sustained by reason of said burning? and the jury having answered the first issue, No, there was a judgment upon the verdict for the defendant and plaintiff appealed to this Court. *Page 288 
It appears, without contradiction, in the evidence that the engine, at the time it was furnished Ellis by the defendant, was in good condition and properly equipped with a spark-arrester; but as to its condition at the time of the fire — some nine months thereafter — there was serious conflict in the testimony. It does not appear by whom the right of way was located, whether by defendant or Ellis, (354) but it is fully established by the evidence that it was, at its location, covered with highly inflammable matter, and continued in this foul condition up to the time of the fire. There was evidence tending to prove that the fire causing the injury, for which plaintiff seeks in this action to recover damages, originated on the right of way from the engine operated thereon, and was thence communicated to plaintiff's adjacent land. In Craft v. Timber Co., 132 N.C. 151, it was held that the rule "applicable to railroad corporations, which makes them liable for fires negligently caused by igniting combustible material on the right of way, has been applied to private railroads constructed for logging purposes." Simpson v. Lumber Co., 133 N.C. 95; Hemphill v. Lumber Co.,141 N.C. 487; Knott v. R. R., 142 N.C. 238.
In Williams v. R. R., 140 N.C. 623, this Court formulated the rules of liability applicable to railroad corporations for negligently causing fires, and the second of these rules is as follows: "2. If fire escapes from an engine in proper condition, with a proper spark-arrester, and operated in a careful way by a skillful and competent engineer, but the fire catches on the right of way, which is in a foul and negligent condition, and thence spreads to the plaintiff's premises, defendant is liable. Moore v. R. R., 124 N.C. 341; Phillips v. R. R., 138 N.C. 12." In Knott v. R. R., 142 N.C. 238, Walker, J., speaking for the Court, said: "It is true he (the plaintiff) alleges that the spark-arrester was defective, but in the seventh section of the complaint he states generally that the fire was caused by a spark emitted from the engine, which ignited the combustible material on the right of way and thence spread to his standing timber, which was destroyed. But can it make any difference in the legal aspect of the case, whether the spark or live coal came from the smoke-stack or the fire-box, even assuming them to have been in the best condition, if eventually it fell upon the foul right of way and produced the conflagration? We think not, because the permitting its right of way to remain in a dangerous condition was an act of negligence, sufficient of itself to cause the damage and necessarily proximate to it, if the fire immediately and without any intervening efficient and independent cause, spread to the plaintiff's *Page 289 
woods. Aycock v. R. R., 89 N.C. 321; Phillips v. R. R., (355)138 N.C. 12; R. R. v. Kellogg, 94 U.S. 469." We consider it to be established by these authorities that it is negligence in a timber company, as well as a railroad corporation, to permit its right of way to become and remain in a foul condition; that such a condition is so dangerous that it may reasonably be anticipated that injury will occur to adjacent landowners from fires originating thereon from engines being operated on it, though such engines be in the best condition and have the best equipment.
The defendant, however, contends that it is not liable to the plaintiff because Ellis, who was operating the engine and train and doing the cutting, logging and hauling, was an independent contractor, as defined by this Court in Craft v. Lumber Co., 132 N.C. 151; Young v. LumberCo., 147 N.C. 26; Davis v. Summerfield, 133 N.C. 325; Gay v. R. R.,148 N.C. 336; Midgette v. Mfg. Co., 150 N.C. 333; Hunter v. R. R.,152 N.C. 682. Defining the independent contractor as contained in these cases, his Honor instructed the jury that if they found as a fact that Ellis was an independent contractor and was working under the contract creating him such at the time the injury was caused to the plaintiff, then the defendant would not be liable. We think this instruction erroneous, not because of an inaccurate definition of "independent contractor," but because, conceding Ellis to have been an independent contractor, we do not think the defendant, as his employer, is relieved of responsibility to the plaintiff for the injury of which he complains, upon the view of the evidence we are now considering. In our opinion, this case falls under one of the recognized exceptions to the rule of nonliability of employer for the acts of the independent contractor. This exception is thus stated by this Court in Davis v. Summerfield, supra:
"And there is still another class of cases to be excepted from the exemption, and that is where the contract requires an act to be performed on the premises, which will probably be injurious to third persons if reasonable care is omitted in the course of its performance. The liability of the employer in such case rests upon the view that he can not be the author of plans and actions dangerous to the property of others without exercising due care to anticipate and prevent injurious (356) consequences." In Bower v. Peate, 1 Q. B. Div., 321 (1875-6),Chief Justice Cockburn thus states the principle upon which this exception rests: "The answer to the defendant's contention may, however, as it appears to us, be placed on a broader ground, namely, that a man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to *Page 290 
prevent the mischief, and can not relieve himself of his responsibility by employing some one else — whether it be the contractor employed to do the work from which the danger arises or some independent person — to do what is necessary to prevent the act he has ordered to be done from becoming wrongful. There is an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted." In Hardaker v. Idle District Council, 1 Q. B. Div., 335 (1896), Lord Justice Smith said, after quoting the above language of C. J. Cockburn: "It should be noted that in Hughes v.Percival, 8 App. Cas., 443, Lord Blackburn doubted whether that duty was not too broadly stated, for he said: `If taken in the full sense of the words, it would seem to render a person who orders post-horses and a coachman from an inn, bound to see that the coachman, though not his servant but that of the inn-keeper, uses that skill and care which is necessary, when driving the coach, to prevent mischief to the passenbers.' [passengers] It is not for me to criticise this statement of Lord Blackburn, but with all respect, I would point out that it seems to me that it is not, in the natural course of things, to be expected, when a man hires post-horses and a coachman from an inn-keeper, that, unless means are adopted to prevent them, injurious consequences will arise to his neighbor. In such a case, in the ordinary course of events, no injuries would occur to any one. The coachman would drive and the hirer would ride in the carriage, and, in the ordinary course, the transit would (357) come to an end without injury to any one." The doctrine of this case has not only been approved by this Court in Davis v.Summerfield, supra, but has been generally accepted by the American courts. Werthimer v. Saunders, 95 Wis. 573; Gaslight Co. v. Norfolk,63 Conn. 495; Williams v. Fresno C. J. Co., 96 Cal. 14; Woodman v. R. R.,149 Mass. 335; Gorham v. Cross, 125 Mass. 232; Carlson v. Stocking,91 Wis. 432; Pye v. Faxon, 156 Mass. 471; R. R. v. Kimberly, 87 Ga. 161;Bridge Co. v. Steinbrock, 61 Ohio St. 215; 76 Am. St., 375. To this case, as reported in the Am. St., there has been appended an elaborate note by the editor in which a large number of cases, both English and American, has been collected, and the principles decided carefully arranged. We do not find, upon a careful examination of the decisions of this Court, any conflict with or modification of the principle stated in Davis v.Summerfield, supra. The difficulty to be met with is in the application of the principle to the facts of the particular case, and not in the recognition of the soundness of the principle itself. In Young's case,supra, the injury inflicted was done by the employees of the independent contractor in felling a tree — a work *Page 291 
not dangerous in itself and from which, if properly done, no injurious consequences would arise. In Gay v. R. R., 148 N.C. 336, it does not appear from the reported case how the injury complained of was caused, except the statement that the action was brought to recover damages caused by fire negligently put out, but an examination of the record of that case on file, discloses that the fire doing the damage was negligently started from a mill camp established by the independent contractor, this negligence being what is termed in many of the cases casual or collateral negligence, and for injuries resulting therefrom the employer would not be liable. 76 Am. St., 388 (note). The liability for those negligent acts is thus stated at that page of the editor's note: "While the contractor alone, and not his employer, is generally liable in cases where work is carried on under an independent employment, this rule of liability is limited to those injuries which are collateral to the work to be performed, and which arise from the negligence or wrongful act of the contractor or his agents or servants. Acts `collateral' to the (358) work contracted for are to be distinguished from those which the contractor expressly agrees and is authorized to do, and from which injury directly results." Smith v. Builders Traders Exchange, 91 Wis. 360, clearly illustrates this doctrine. In that case the plaintiff was injured by the negligent act of the contractor's employees in permitting a brick to fall from an uncompleted building. The employer was held not liable. Reediev. R. R., 4 Exch., 244, and Hilliard v. Richardson, 3 Gray, 349, further illustrate this doctrine. In Midgette's case, supra, this Court ruled that the jury was warranted in finding from the evidence that the contractor was not an independent contractor, because the employer retained control and direction of the work. In the course of the opinion in that case, Connor,J., says: "How far this exception to the nonliability of the owner of the property is applicable to a case like this we do not undertake to say. It is well worthy of consideration whether the owner of machinery, unsafe for use and dangerous to employees, can, by contracting with an insolvent person to operate it to do the owner's work, and by simply surrendering control of the manner of doing the work, avoid liability for injuries sustained by employees." In Hunter's case, supra, this Court ruled that the work there handed over to the independent contractor to be done, to wit, blasting of rock, fell well within the established exception to the rule of nonliability by reason of its dangerous character. In the present case, it does not appear whether the defendant or Ellis located the right of way, nor do we think this material, because if located by Ellis, it was done by him as agent of the defendant, as it was not within the terms of his contract with the defendant. As by the terms of the conveyance, the right of way, *Page 292 
when located, was to be held in fee, the presumption, perhaps, would be that its location was an act of the defendant — the grantee.
We have thus far considered the case upon the view that the fire causing the damage originated on the foul right of way, from sparks from the engine operated thereon. There are two other views suggested by the evidence: (1) That the fire did not originate on the right (359) of way, but was caused by a spark emitted by a defectively equipped engine; (2) that it was not set out by a spark from the engine. If the jury should find this to be the fact, though the fire may have originated from some act of the employees of the independent contractor, Ellis, such act would be casual or collateral negligence, and the authorities cited are decisive that the defendant would not be liable. The doctrine of respondeat superior would not apply.
We will now consider the view based upon a finding that the fire was caused by a spark emitted by a defectively equipped engine, but not communicated from the right of way. Would the defendant be liable? If the defendant itself had been at the time operating the engine, its liability is governed by the third rule formulated in Williams v. R. R.,140 N.C. 623, as follows: "3. If fire escapes from a defective engine, or defective spark arrester or from a good engine not operated in a careful way or not by a skillful engineer, and the fire catches off the right of way, the defendant is liable." The liability of the employer rests upon the ground that mischievous consequences will arise from the work to be done unless precautionary measures are adopted, and the duty to see that those precautionary measures are adopted rests upon the employer, and he can not escape liability by entrusting this duty to another, though he be employed as an "independent contractor" to perform it. In Bridge Co. v. Steinbrock, supra, the principle is thus stated: "The weight of reason and authority is to the effect that, where a party is under a duty to the public or a third person to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he can not, by letting it to a contractor, avoid his liability in case it is negligently done to the injury of another (citing numerous authorities). The duty need not be imposed by statute, though such is frequently the case. If it be a duty imposed by law, the principle is the same as if required by statute. Cockburn, C. J., in Bower v. Peate,supra. It arises at law in all cases where more or less danger to others is necessarily incident to the performance of the work let to contract. It is the danger to others, incident to the performance of the work let to contract, that raises the duty and which the employer can not (360) shift from himself to another so as to avoid liability, should injury result to another from negligence in doing the work." It can not be denied that the operation of a defectively equipped engine, *Page 293 
or the operation of a good engine not carefully managed or managed by an unskillful engineer, is a source of great danger to property adjacent to the road on which such an engine is operated. Such danger raises the duty which the employer can not shift from himself to another. It is undoubted, however, that if the engine was properly equipped and in good condition and properly managed, even though it emitted a spark which set out fire on the adjacent property of the plaintiff off the right of way, neither the defendant nor Ellis would be liable. Rule 1. Williams v. R. R., supra. It is suggested that the application of the principles we have approved in this decision abrogates the law of the independent contractor. The same suggestion was made to the Court in Bridge Co. v. Steinbrock, supra. That Court fully met the suggestion by saying: "It still leaves abundant room for its application." We do not think the views of the law which we have expressed in this opinion were properly submitted to the jury for their guidance, and we, there fore, direct a new trial to be had.
New trial.
Cited: Beal v. Fiber Co., 154 N.C. 151; Twiddy v. Lumber Co., ibid., 240; Denny v. Burlington, 155 N.C. 37; Johnson v. R. R., 157 N.C. 383;Arthur v. Henry, ibid., 402; Harmon v. Contracting Co., 159 N.C. 27;Dunlap v. R. R., 167 N.C. 670; Strickland v. Lumber Co., 171 N.C. 755.