W. A. HOPPER v. S. S. ORDWAY & SONS and THE AVALON MILLS.

(Filed 22 March, 1911.)

1. Contracts — Independent Contractor—Negligence—Supervision— Right to Terminate.

A responsible party who has contracted to complete a work in its entirety, in this case a mill, is an independent contractor and solely liable as such for damages for personal injuries to an employee working upon its construction; and the fact that the contract with the owner provides for the inspection of the work by the engineer of the latter to ascertain that it comes up to the plans and specifications he has furnished therefor, with clauses of forfeiture under the contract if it does not; and that the engineer may require the contractor under like conditions to put on an extra force to complete the work, if in his judgment it is necessary to do so to bring it within the time agreed upon, do not alter the relationship of independent contractor so as to make the owner liable for damages for his negligence. *Denny v. Burlington,* 155 N. C., 33, cited as controlling.

2. Same—Interpretation of Contract—Conclusiveness.

When there is no right to put an end to a contract to construct a piece of work, in this case a mill, which was to have been done in its entirety by the contractor, but merely the right on the part of the owner to terminate it in the event the contractor should not perform it according to its reasonable stipu-

lations under the inspection of the engineer of the former, there is no application of the doctrine that "When the employer may at any time terminate the employment, though strong evidence that the employee is a mere servant, it is not conclusive."

APPEAL from *W. J. Adams, J.,* at June Term, 1911, of ROCKINGHAM.

This is an action to recover damages for the death of the plaintiff's intestate, caused, as the plaintiff alleges, by the negligence of the defendants.

The plaintiff was aiding in building the foundation of the mill of the defendant Avalon Mills at the time of his injury, and there is ample evidence of negligence.

The defendant Avalon Mills denies negligence, and alleges that the work was being done by the defendants Ordway & Sons, as independent contractors, and the defendant's counsel say that the only question presented by the eleven assignments of error is whether or no S. S. Ordway & Sons are independent contractors.

There are three paper-writings which constitute the contract between the defendants.

The first is entitled, "Specifications for constructing the masonry abutment and head gates for the Avalon Mills at Mayodan, N. C.," and all specifications relate wholly to the material to be used, except the fourth, seventh, eighth, and ninth, which are as follows:

"4. Mortar shall be composed of two parts clean, sharp sand and one part of Rosendale cement of such brand as the engineer may approve, and mixed and used in such manner as he may direct."

"7. Coping and arch masonry, should any be required, is not to be included in this work, but may be furnished by the company and set in place by the contractor at a fair price. to be determined by the engineer."

"8. The work shall be begun within ten (10) days from the time of award of the contract, and be finished and completed within four (4) months thereafter. Should the contractor not prosecute the work with such vigor as to indicate the completion of the work within the time specified, he must increase the force

and equipment to such extent as the engineer may deem necessary to complete the work within the prescribed time, or suffer the penalty of a forfeiture of his contract and all the monies that may be due him upon the work at such time as the right may be exercised by the company, party of the second part, viz., The Avalon Mills."

"9. At the end of each thirty (30) days after the work is begun the engineer shall measure up all the finished work, and make due and proper safe allowance for unfinished work, and render an estimate of the amount due the contractor for such work, which amounts shall be paid to him, less ten (10) per cent, which shall be held until the final completion of the work by the contractors."

The second is entitled, "Specifications for constructing the head race or canal for the Avalon Mills Company, at Mayodan, N. C.," and contains detailed statements as to how the work shall be done, and among others, the following provisions: "Should the contractor not prosecute the work with such vigor as to indicate the completion of the work within the time specified, he must increase the force and equipment to such an extent as the engineer may deem necessary to complete the work within the prescribed time, or suffer the penalty of a forfeiture of his contract and all his money that may be due him upon the work at such time as this right may be exercised by the company, party of the second part, viz., The Avalon Mills." "The entire work shall be done in full accordance with the directions and instructions of the engineer or his assistant, and a failure on the part of the contractor to observe and well and truly carry out the work in accordance with the instructions of the engineer or his assistant shall be deemed sufficient cause for the exercise of his forfeiture clause set forth in section (8) by the said Avalon Mills."

The third is entitled, "Specifications to accompany plans of dam, bulkhead gates and spillway for the Avalon Mills, all made for same by C. R. Makepeace & Co., mill engineers, Providence, R. I., August 5, 1899," and after specifying how the work shall be done, says: "In the foregoing specifications it is intended to enumerate all of the leading particulars in the

erection and finishing of all this work, and it is understood by the contractor that the same is to be finished complete to the intent and meaning of these specifications and the plans and details; and all materials and workmanship connected with this work must be entirely satisfactory to C. R. Makepeace & Co., or the engineer or superintendent in charge of the work. It is understood by the contractor that should any difference of opinion arise, respecting said workmanship, work or materials, or any other matter whatsoever relative to the erection and finishing of this work, between the contractor and owners, such difference shall be submitted to C. R. Makepeace, and his decision thereon shall be final and conclusive between both parties, and it is so understood and agreed by said parties."

It was in evidence that one of the workmen went to Avalon where the work was being done, upon a telegram sent by the superintendent of the defendant mills, but the superintendent testified that he sent the telegram at the request of Ordway & Sons, who needed a mason, and because they were not acquainted at the place where the mason lived.

The plaintiff contended that, upon the face of the papers, Ordway & Sons were not independent contractors, and requested the judge to so charge the jury, and upon his refusal to do so, excepted.

There was a verdict against Ordway & Sons, but no judgment upon the verdict because of their discharge in bankruptcy.

There is no claim that Ordway & Sons were not responsible parties at the time the contracts were made.

The plaintiff excepted and appealed.

*C. O. McMichael and H. R. Scott for plaintiff.*

*Johnston, Ivie & Dalton, and Manly, Hendren & Womble for defendant.*

ALLEN, J., after stating the case: The case of *Denny v. Burlington,* 155 N. C., 33, is decisive of this controversy, and upon that authority, in the absence of other evidence, his Honor might have held as matter of law, upon the papers in evidence, that the relation of independent contractor was established.

In the *Denny case* the city of Burlington entered into a con-

tract for the construction of a system for water and sewerage, in which the details as to material, the work to be performed, and the time of performance were set out with particularity, and it was also provided that the materials furnished and the labor done should be done "in accordance with the specifications and plans, and the instructions to bidders and the proposal and such detailed directions, drawings, etc., that may be given by the engineer from time to time during the construction, and in full compliance with this agreement," and that, "to prevent all dispute and litigation, it is agreed by and between the parties to this contract that the engineer shall in all cases determine the quality and quantity of the several kinds of work which are to be paid for under this contract, and his decisions shall be final and conclusive, and he shall determine all questions in relation to lines, levels, and dimensions of the work and as to the interpretations of the plans and specifications. The committee, through the engineer, shall have the right to make any alterations in the plans or quantity of the work herein contemplated, and it is expressly agreed and understood that such alterations, additions, modifications, or omissions shall not in any way violate this contract, and the contractor hereby agrees not to claim or bring suit for any damages, whether loss of profit or otherwise. . . . Whenever the contractor is not on any part of the work where it is desired by the engineer to give instructions, the superintendent or foreman who may be in charge of that particular part of the work shall receive and obey said instructions from the engineer. . . . But no work other than that included in the contract shall be done by the contractor without a written order from the engineer. . . . The contractor further agrees that if the work to be done under this contract shall be abandoned, or if the contract shall be assigned by said contractor, otherwise than herein provided, or if at any time the engineer shall be of the opinion, and shall so certify in writing to said committee, that the said work is unnecessarily or unreasonably delayed, or that the said contractor is willfully violating any of the terms or conditions of this contract, or is not executing this contract in good faith, or is not making such

157—9

progress in the executing of said work as to indicate its comple-
tion within the time specified, said committee shall have the
right to notify said contractor to discontinue all work or any
part thereof under this contract, and upon such notification
said contractor shall discontinue said work, or such parts there-
of as said committee may designate; and said committee shall
thereupon have the power to employ by contract, or other-
wise, and in such manner and at such prices as it may deter-
mine, any persons, etc., which it may deem necessary to work
at and be used to complete the work herein described, or such
part of it as said committee may have designated." The engi-
neer was appointed by the defendant, and it was held that the
person with whom the contract was made was an independent
contractor.

It will be observed that not only were the materials to be
furnished and the labor to be done, subject to the supervision of
the engineer of the defendant, but in accordance with his in-
structions, and that the defendant reserved the right of inspec-
tion and the right to terminate the contract. There are also
other provisions extending the authority of the defendant be-
yond the powers conferred on the Avalon Mills in this case.

The citation from A. and E. Enc., vol. 16, p. 190, that "the
fact that the employer may at any time terminate the employ-
ment, though strong evidence that the employee is a mere ser-
vant, is not conclusive in that regard," is not, in our opinion,
applicable to the contract under consideration, because, under
that contract, there is no absolute right to terminate the contract
at any time, but to put an end to it, if the contractor is not per-
forming it according to the stipulations, which is reasonable and
necessary. The same author, on pages 188 and 189, states with
accuracy the prevailing rule as to the right to exercise super-
vision. He says: "A reservation of the employer of the right
by himself or his agent to supervise the work for the purpose
merely of determining whether it is being done in conformity
to the contract does not affect the independence of the relation.
The fact that the work is to be supervised by an architect rep-
resenting the owner is also immaterial if this involves merely
his approval or disapproval of the results of the work, and not

directions as to the mode of arriving at such results. And it has been held that a provision that the work shall be done under the direction and to the satisfaction of a representative of the employer does not make the employee a mere servant, but that such a provision is merely to secure a satisfactory performance of the work in compliance with the contract. Nor is it material that the contract provides that the employer shall, during the progress of the work, define and direct the scope thereof."

His Honor, instead of deciding the question as matter of law, submitted it to the jury in a charge which is full, clear, and accurate, and which might be copied as a correct summary of the law in determining when one is an independent contractor, and the jury having decided against the plaintiff, there is nothing, upon the appeal, of which he can complain. It is to be regretted that he has a barren recovery for a death caused by negligence, but this consideration will not justify fixing responsibility on a party who is not liable.

We find

No error.