NANCY CARROLL EVANS, BY HER NEXT FRIEND, CLAUDE L. EVANS, v. JACK ELLIOTT, ROCKINGHAM HOMES, INCORPORATED, EDNA MILLS CORPORATION, AND ROBERT OLIVER.

(Filed 5 November, 1941.)

**1. Master and Servant § 4a—**

The contract in this case under which the contractor agreed to install plumbing in certain specified dwellings at a stipulated sum per house, *is held* to create the relationship of principal and independent contractor as a matter of law.

**2. Master and Servant § 22—Liability of principal for injuries to third persons in performance of work by an independent contractor.**

In order for the principal to be liable to third persons injured in the performance of work by an independent contractor it is not required that the work involve major hazards within the rule of the principal's liability to employees of the independent contractor, but the principal is liable to third persons not only if the work is inherently and intrinsically dangerous, but also if the injuries result from dangerous conditions inherently created in the ordinary progress of the work, as distinguished from dangers collaterally created by the negligence of the contractor, from which, under the circumstances of each particular case, injury to the public may be reasonably foreseen unless due precautions are taken.

Evans *v.* Rockingham Homes, Inc.

**3. Same—**

Whether conditions naturally created in the progress of the work are such as to create a hazard to the public unless precautions are taken, is affected to a large extent by the surrounding circumstances and the conditions under which the work is to be done, since a condition which ordinarily might not be hazardous might become so when existing in a thickly populated section in which many children live.

**4. Same—Conditions created in performance of work held hazardous under the circumstances, placing duty on principal to see that due precautions were taken.**

The builder of a house agreed with the purchaser to have certain plumbing installed and contracted with another to do the plumbing work, and in the performance of the work a ditch for the sewer line was dug and a part of the ditch was left open between two houses in a thickly populated district in which many children lived and played. Plaintiff was about four years old and lived in the house adjacent to the ditch, and fell or was pushed from the porch of her residence into the ditch, resulting in serious injury. *Held:* Under the circumstances, the performance of the work created a condition of inherent danger, and injury to children in the neighborhood could have been reasonably anticipated unless proper precautions were taken, and therefore the fact that the work was performed by an independent contractor does not absolve the principal from liability.

**5. Same—**

The duty of a principal to see that proper precautions are taken to avoid likelihood of injury to the public from conditions inherently created in the performance of work by an independent contractor, is a duty owed to the public, and therefore whether the person injured is a licensee or trespasser, although germane in ascertaining the liability of the owner of the premises, is immaterial in determining the liability of the principal.

**6. Same—**

The duty of a principal to see that proper precautions are taken to avoid likelihood of injury to the public from conditions created in the performance of work by an independent contractor is a nondelegable duty imposed by law upon the principal, and he is directly liable to the person injured as a result of his negligent failure to perform such duty, and may be held responsible notwithstanding that nonsuit is taken as to the contractor.

**7. Same—**

Where the evidence shows the contract of employment created the relationship of principal and independent contractor as a matter of law, it is error for the court to submit an issue as to whether that relationship existed, and charge in effect that the relationship of principal and independent contractor would not exist if defendant failed to establish that the work did not fall within the exceptions to the general rule of nonliability.

**8. Same—**

Where the evidence establishes that the relationship of principal and independent contractor existed as a matter of law, and the principal is

sought to be held liable upon an exception to the general rule of non-liability, it is error for the court to charge the jury upon the theory of the principal's liability as an employer upon the doctrine of *respondeat superior*.

STACY, C. J., concurring in part and dissenting in part.

BARNHILL and WINBORNE, JJ., join in the opinion of STACY, C. J.

CLARKSON, J., concurring.

APPEAL by defendant, Rockingham Homes, Inc., from *Warlick, J.,* at March Term, 1941, of ROCKINGHAM.   New trial.

The plaintiff sued by her next friend to recover for injuries sustained through the alleged negligence of the defendants.   During the trial, the plaintiff took a voluntary nonsuit as to the defendants, Elliott and Oliver.   Motion for judgment as of involuntary nonsuit as to the Edna Mills Corporation was allowed on demurrer to the evidence at the conclusion of plaintiff's evidence.

The alleged negligence consisted in digging or causing to be dug, and leaving unprotected and unguarded, a deep sewer ditch leading across the sidewalk of Way Street in a very thickly settled mill village section, which ditch led to and past the porch of the Oliver house and in close proximity thereto.   The ditch itself was some three and one-half feet deep, and the drop from the floor of the porch to the bottom of the ditch was eight or ten feet.   A large number of children were known to form a part of the population and to frequent the neighborhood premises, visiting and playing in and about the houses and on the Oliver premises contiguous to the ditch.   The Evans children and Oliver children had been exchanging visits for some time.   The plaintiff, a girl child about four years of age, playing upon the Oliver porch with other children, either fell or was pushed off the porch into the ditch, falling some ten feet into the bottom thereof.   Her head struck the "bell" joint of the iron sewer pipe which had been installed and left exposed at the bottom of the excavation.   She sustained a fractured skull, received a deep gash over the forehead which injured the eye, and, as the evidence tended to show, was seriously and permanently injured.

The defendant admitted knowledge of the fact that the section was thickly populated, with children residing therein, and that the plaintiff either fell or was pushed into the ditch and received injuries therefrom, but denied its liability or responsibility for the opening of the ditch and plaintiff's injury.   Defendant alleged that at the time of plaintiff's injury, it had sold the Oliver house to its then occupants under a contract which required the defendant to "install in said building a sewer line and fixtures," and in pursuance thereof contended that it engaged Jack Elliott (its codefendant), trading as Reidsville Plumbing Company, as an independent contractor to do that job, and concludes that it is

EVANS *v.* ROCKINGHAM HOMES, INC.

relieved thereby from any responsibility for the manner in which he prosecuted the work, and from all liability for plaintiff's injury.

The plaintiff's evidence with respect to the populous and much frequented character of the neighborhood, and other conditions about the Oliver house, and of the conditions brought about by Elliott and existing in and about the premises at the time of the injury, and of the circumstances of the injury, substantially followed the complaint and tended to show negligence on the part of Elliott as the proximate cause of the injury. It also tended to show that the ditch remained open and unprotected for approximately three weeks, and that this condition was in plain view of defendant's office windows, and that officers of the defendant passed the premises frequently and knew or could have known of these conditions. It further tended to show that an officer or officers of the defendant came upon the premises at least twice for the purpose, as defendant contended, of inspection.

In evidence also was the written contract between defendant and Jack Elliott with reference to this work, which was as follows (substituting the Oliver premises for those named in the writing):

"November 4, 1938

"I agree to install plumbing in five dwellings on West Market Street and Piedmont Street for the sum of $70.00 per house or a total of $350.00 for all labor. Rockingham Homes, Inc., to furnish all necessary material and will pay for any taps required. All work to be done in a workmanlike manner, payment to be made upon satisfactory completion of the job.

"ROCKINGHAM HOMES, INC.

E. J. ELLIOT                W. B. PIPKIN,

Sec. & Treas."

The following issues were submitted to the jury:

1. Was E. J. (Jack) Elliott, alleged in the pleadings to be trading as the Reidsville Plumbing Co., an independent contractor on the work to be done, and done, on the home of Robert Oliver on Way Street in the City of Reidsville?

2. Was the plaintiff injured by the negligence of the defendant, Rockingham Homes, Incorporated, as alleged in the complaint?

3. What amount, if anything, is the plaintiff entitled to recover of the defendant, Rockingham Homes, Incorporated?

Upon these issues the judge, *inter alia,* instructed the jury as follows:

"Now, gentlemen of the jury, this paper writing which was offered in evidence and which reads as follows, being defendant's Exhibit No. E, dated November 4, 1938: (see contract set out above) is, and I instruct

you as a matter of law, the creation of a relationship which would make E. J. Elliott, trading as Reidsville Plumbing Company, as alleged in the answer, an independent contractor, and if the defendant, Rockingham Homes, Incorporated, has satisfied you from the evidence and by its greater weight, under the instructions just previously given, that the work to be done there was not of such a type as to lead to the creation of a nuisance, or the maintenance of the open ditch was not of such type as would cause harm and injury and damage to another, and has satisfied you from the evidence and by its greater weight that the exceptions that I will give to you presently under the rules do not apply, then I instruct you, if you are so satisfied, that you will answer that first issue YES. Otherwise, if you are not so satisfied, you will answer it NO."

"So, therefore, gentlemen of the jury, if you find from the evidence and by its greater weight that Jack Elliott, under this issue, one, was an independent contractor and that as such he was not permitting any condition to arise there which of itself would be dangerous in the way of creating a nuisance, or otherwise, or which would come within the exceptions set out, if you are so satisfied or satisfied by the greater weight of the evidence, you would answer the first question YES. If, however, you are not so satisfied, you would answer it NO. If you answer the first question YES, under these instructions, then it would not be necessary for you to answer the remaining questions; that would be an end to the controversy, for you would then have found that he was an independent contractor, that he and he only would be responsible for any alleged negligence which might proximately result in the injury charged in this case and Rockingham Homes, Incorporated, would not be responsible."

He further instructed the jury, in the event they should answer the first issue NO, they should apply the law relating to master and servant and liability of the master for the servant's negligence, which he explained.

The jury answered all the issues favorably to the plaintiff, and from the judgment which ensued, the defendant appealed, assigning error.

*Glidewell & Glidewell and Sapp, Sapp & Atkinson for defendant, appellant.*

*P. T. Stiers and Hobgood & Ward for plaintiff, appellee.*

SEAWELL, J. Assuming the contract between appellant and its co-defendant to be as it appears in defendant's evidence, meagre as it is, we think it must be construed as constituting Elliott an independent contractor. The existence of such a contract, however, was a matter to be proved by defendant. The offices of the jury might be called on in this

9—220

respect, whether by separate issue or on appropriate instruction, but the jury could not be allowed to interpret its legal effect. *Drake v. Asheville,* 194 N. C., 6, 138 S. E., 343.

But this does not work a complete exoneration of the appealing defendant. Without going into an unnecessary analysis of the terms in which the instructions to the jury were actually couched, it is sufficient to say that the court was justified, under the evidence, in instructing the jury upon the exceptions to the general rule that the employer of an independent contractor is not liable for negligence arising in the progress of the work. Whether we consider the evidence as tending to show that the work, under the circumstances of this case, involved an inherent danger, or whether it tended to show that under the contract it might reasonably have been foreseen that the work, which was ordinarily accomplished without danger, when adequate precautions are taken, might, in its progress, give rise to conditions of danger when such precautions are omitted, the defendant was not entitled to have the case withdrawn from the jury on either aspect.

The conditions under which an employer is held liable for negligence notwithstanding the employment of an independent contractor, are well understood. These exceptions to the general rule are comprehensively expressed in 27 Am. Jur., pp. 515, 516: "It is well settled that one who orders work to be executed, from which in the natural course of things, injurious consequences must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see that necessary steps are taken to prevent the mischief, and such person cannot relieve himself of his responsibility by employing someone else, whether the contractor employed to do the work from which the danger arises or some third person, to do what is necessary to prevent the work from becoming wrongful. This rule is sufficiently comprehensive to embrace, not only work which, from its descriptions, is 'inherently' or 'intrinsically dangerous,' but also work which will, in the ordinary course of events, occasion injury to others if certain precautions are omitted, but which may, as a general rule, be executed with safety if those precautions are adopted."

This is almost the identical language employed in *Bower v. Peate,* 1 Q. B. Div. (1875-6), 321, and quoted in full with approval in *Davis v. Summerfield,* 133 N. C., 325, 328, 329, 45 S. E., 654, 655, and again in *Cole v. Durham,* 176 N. C., 289, 298, 97 S. E., 33, 37.

The courts have found no rule of universal application by which they may abstractly draw a line of classification in every case between work which is inherently dangerous and that which is not. The subject must not be confused with concepts of hazardous employment, usually involving a high degree of danger, since here we are dealing with danger which

manifests itself to the general public. It is not essential, to come under the rule, that the work should involve a major hazard. It is sufficient if there is a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor, which latter might take place on a job itself involving no inherent danger. This concept is aptly expressed in a leading case as follows: "If the work itself creates the danger or injury, then the ultimate superior or proprietor is liable to the person injured by a failure to properly guard or protect the work, even though the work is entrusted to an independent contractor." *Downey v. Lowe,* 48 N. Y. S., 207.

Our own Court expresses it: "The liability of the employer rests upon the ground that mischievous consequences will arise from the work to be done unless precautionary measures are adopted, and the duty to see that these precautionary measures are adopted rests upon the employer, and he cannot escape liability by entrusting this duty to another as an 'independent contractor' to perform." *Thomas v. Lumber Co.,* 153 N. C., 351, 69 S. E., 275; *S. Louis & S. F. R. Co. v. Maddern,* 77 Kan., 80, 93 Pac., 586; *Cameron Mills and Elevator Co. v. Anderson,* 98 Tex., 156, 81 S. W., 282.

To come under the second condition of liability it is only necessary that the work which, as a general rule may be carried out with safety if certain precautions are observed, will likely cause injury if these precautions are omitted. *Richardson v. Consolidated Light,* 90 Vt., 552, 99 Atl., 241; *Johnson v. J. I. Case Threshing Machine Co.,* 193 Mo. App., 198, 182 S. E., 1089.

Such negligence is, of course, affected by the condition of foreseeability, which is necessary to fix the defendant with liability, but the rule of reasonable prudence forbids that one should escape liability for the consequences of his act on the ground that he could not foresee such consequences in photographic detail. The usual rules apply in such cases, and it is only necessary that he might reasonably see that some similar result might follow as a consequence of his act. *Lancaster v. Greyhound Corp.,* 219 N. C., 679, 688, 14 S. E. (2d), 820, 826; *Hunter v. R. R.,* 152 N. C., 682, 68 S. E., 237; *Washburn v. Laclede Gas Light Co.,* 202 Mo. App., 102, 115, 214 S. W., 410, 414.

The contractor may, of course, be liable for the same want of due care in not taking the necessary precautions, for the omission of which the employer becomes liable; but as to the employer, the liability is direct, and not derivative, since public policy fixes him with a nondelegable duty to see that the precautions are taken.

In applying these principles to the case at bar, we cannot divest the work of its surrounding circumstances as disclosed by the evidence—

consider that the contractor was simply digging a ditch, and leave it at that. The facts as they appear in evidence are that the defendant, in compliance with its contract with Oliver, caused this excavation or ditch to be made. It was something like a yard wide and approximately three and one-half feet deep, with an iron pipe at the bottom. The excavation was made alongside and contiguous to the porch of an inhabited house, and in a thickly populated area, much frequented both by children and adults. Considering the physical conditions, its location and the surrounding circumstances, it was of a character which might well be considered dangerous to those lawfully using the premises or being within the zone affected by the defendant's nondelegable duty to see that precautions were taken to avoid or eliminate the danger.

To get the whole picture, we must understand that the conditions under which the work is to be done, within the contemplation of the parties, the known circumstances which attend it, enter importantly into the question whether it is hazardous—that is, whether it involves an appreciable and foreseeable danger to the workers employed or to the public generally, against which suitable precautions must be taken. *Young v. Lumber Co.,* 147 N. C., 26, 60 S. E., 654; *Hunter v. R. R., supra; Cole v. Durham,* 176 N. C., 289, 97 S. E., 33; annotations, 23 A. L. R., 1084; 76 A. L. R., 1258. And it must be observed, too, that the liability of the employer is not affected by the fact that these precautions are usually taken or that the independent contractor explicitly agrees to provide them. Annotations, 65 L. R. A., 37.

Known conditions under which the contract must be carried out, the time, place, and circumstances attending the work, may unquestionably affect its character as hazardous or nonhazardous. For instance, the ordinary erection of a building has, under the circumstances of the particular case, been held to be a nonhazardous work, *Looker v. Gulf Coast Fair,* 203 Ala., 42, 81 So., 832; *Boomer v. Wilbur,* 176 Mass., 482, 57 N. E., 1004, 53 L. R. A., 172, yet if the contract call for the construction, in a populous city, of a steel skyscraper, flush with the sidewalk, where beams weighing tons are lifted and swung into position by powerful derricks, the construction of such a building would scarcely be considered as involving no danger to the public. *Earl v. Reid,* 21 Ont. L. Rep., 545 (these citations are from pertinent text, 27 Am. Jur., 522). Cutting and removing a tree in the midst of a forest would probably not rank as a hazardous work. But the cutting and removal of a large tree in close proximity to dwellings and in an area traversed by many people, would probably be sufficiently hazardous as to require precautions with which we are all familiar. *Young v. Lumber Co.,* 147 N. C., 26, 60 S. E., 654. So to dig a drain ditch in a pasture, far from human habitation, certainly would not be considered dangerous; but an excavation

of that character a yard wide and three and one-half feet deep, in a thickly populated area, where many persons have and exercise the right to be, is, we think, if left without adequate precautions, too obviously dangerous to be debatable.

The duty of appellant to those who might lawfully be within the zone of danger created by the failure to use due precautions is not subject to the limitations applying to the duty of the owner of the premises, for the appellant was not such owner under the stipulation found in the record. We therefore omit any discussion of the status of the injured child as licensee, invitee or trespasser. The duty which the appellant owed was to any member of the general public who might lawfully be at the place of danger and suffer injury therefrom.

The voluntary nonsuit taken as to the codefendant, Elliott, left the cause of action as to the appealing defendant unaffected. That would be so in any case, since the plaintiff was not required to bring action against both tort-feasors, even though their negligence might have been joint or concurrent. In the case at bar, however, the negligence of appellant, if it is found negligent, is not imputed, but is original and independent as a violation of duty which the policy of the law makes nondelegable.

But we think the able trial judge fell into error in his presentation to the jury of the principles governing liability of the employer of an independent contractor, and the application of these principles to the facts. It was error to instruct the jury that in order to have the first issue answered in the affirmative, the burden was upon the defendant to show that the work did not fall within the exceptions above mentioned. Such proof was not relevant to the issue. Furthermore, the confusion thus produced vitiated the instruction on the second issue. Indeed, we think it was error to instruct the jury on the relation of master and servant, and negligence which might be imputed to defendant on that theory, and upon the principle of agency or *respondeat superior,* a relation which, as the evidence now stands, did not exist.

For this error the appellant is entitled to a new trial, and it is so ordered.

New trial.

STACY, C. J., concurring in part and dissenting in part: Two propositions are announced by the majority, (1) that Elliott was an independent contractor, and (2) that the work done was "too obviously dangerous to be debatable." With the first I agree. With the second I disagree, if by "obviously dangerous" is meant inherently dangerous.

It is to be remembered that Elliott, the independent contractor, Oliver, the owner of the house, and the Edna Mills Corporation are no longer in the case. They were let out by judgments of nonsuit.

The Rockingham Homes, Inc., sold the house and lot in question to Oliver and agreed to "install in the residence situated on the above numbered lot bath fixtures, including a bathtub, a lavatory and a commode in the bathroom, and a kitchen sink and 30 gallon hot water tank in the kitchen." Jack Elliott, trading as Reidsville Plumbing Company, was engaged to do the work, and the terms of his agreement are in writing. They are clear and speak for themselves. *Brock v. Porter, ante,* 28. The ascertainment of their meaning and effect is for the court, and not for the jury. *Drake v. Asheville,* 194 N. C., 6, 138 S. E., 343; *Patton v. Lumber Co.,* 179 N. C., 103, 101 S. E., 613; *Young v. Jeffreys,* 20 N. C., 357. Under the contract, Elliott agreed to do the work as an independent contractor. *Young v. Lumber Co.,* 147 N. C., 26, 60 S. E., 654.

Now, in respect of the character of the work to be done, it appears that the Oliver house is situate in the Edna Mills district, a thickly populated area of the city of Reidsville; that a number of children reside in the neighborhood; that there are three children in the Oliver home and four in the Evans home, who live just across the street; that these children visit and play together; that other children in the neighborhood visit the Oliver children; that in all there are 25 or 30 children in the vicinity, and that these facts were known to the defendant.

It further appears that Elliott entered upon his work in January, 1939, two or three weeks prior to plaintiff's injury; that he dug a ditch, 2½, 3 or 3½ feet deep and 2 feet wide from Way Street to the Oliver house and extending under the house to the bathroom for the purpose of laying a pipe and connecting with the city sewer line; that the ditch ran along the south end of the porch, which was about 2½ feet from the ground; that there was no railing or banister at this end of the porch; that a section of pipe was lying in or protruding from under the house and into the ditch with a rim or "bell" at the end of it; that the work was stopped temporarily because of excessive rains, and water in the ditch, which prohibited proper leading of the joints; that during this time the ditch was covered from the street to a point "a little by the porch, a little by the corner" some 12 or 14 inches; that this left an uncovered space beside the porch "between two and three feet long and about two feet wide"; and that it is not customary, in work of this kind, to "cover a ditch inside the property."

It further appears, by admission in defendant's answer, "that the minor plaintiff either fell or was pushed into the ditch"—that is, into the open space at the south end of the porch, and was injured. There is no other evidence as to how the injury occurred. The record is silent on whether she fell from the porch or reached the opening over the embankment from the south.

On this record, then, the question arises whether the plumbing called for in the contract was so inherently dangerous as to render the defendant jointly liable with the independent contractor for failure properly to safeguard the work while in progress. None of the authorities cited in the majority opinion sustains an affirmative answer. On the contrary, they point in the opposite direction.

The installation of plumbing in a private dwelling is not regarded as especially hazardous. Certainly, the plumbing provided for in the contract with Elliott did not require the performance of work "intrinsically or inherently dangerous, however skillfully and carefully performed." *Davis v. Summerfield,* 133 N. C., 325, 45 S. E., 654; *Dunlap v. R. R.,* 167 N. C., 669, 83 S. E., 703.

The rule of responsibility in respect of "intrinsically dangerous" work is based on the unusual hazard which inheres in the performance of the contract, and not from any collateral negligence of the contractor. *Bibb v. R. R.,* 87 Va., 711. Mere liability to injury is not the test, as injury may result in any kind of work where it is carelessly done, albeit with proper care it is not especially hazardous. *Vogh v. Geer,* 171 N. C., 672, 88 S. E., 874. The word "dangerous" means attendant with risk; perilous; something which in itself is unsafe. *Scales v. Lewellyn,* 172 N. C., 494, 40 S. E., 521.

The act of negligence here relied upon was the failure of the workmen properly to cover the ditch in question during the delay occasioned by the rains. This was Elliott's negligence, if negligence at all, and not that of the defendant. The delay was not within the contemplation of the parties. Elliott's negligence in this respect, if such it were, was collateral to the contract. It certainly was not inherent in the work in the sense this term is used to import original liability or a duty in connection with the work which may not be delegated to an independent contractor. *Cole v. Durham,* 176 N. C., 289, 97 S. E., 33.

The case of *Fink v. Missouri Furnace Co.,* 82 Mo., 276, 52 Am. Rep., 376, is much like this one. There it was held that a person employing a contractor to haul sand was not liable for his negligence in so digging the sand as to form a dangerous bank which caved in and injured a young child. In that case, as here, it appeared "that there were quite a number of houses in the vicinity of said lot which were occupied by families with a number of children."

Likewise, in *Frassi v. McDonald,* 122 Cal., 400, 55 Pac., 139, 772, it was held that the owner of a building in process of erection, entrusting to an independent contractor the work of laying pipes in the street, connecting with the building, was not liable for the negligence of the contractor in tearing up the sidewalk in the prosecution of his work, and leaving it in such condition as to be dangerous to persons passing by.

The whole subject is fully discussed in *Davis v. Summerfield, supra;* *Denny v. Burlington,* 155 N. C., 33, 70 S. E., 1085; *Thomas v Lumber Co.,* 153 N. C., 351, 69 S. E., 275; *Hopper v. Ordway,* 157 N. C., 125, 72 S. E., 839; *Drake v. Asheville, supra; Teague v. R. R.,* 212 N. C., 33, 192 S. E., 846; *Hudson v. Oil Co.,* 215 N. C., 422, 2 S. E. (2d), 26. See, also, exhaustive note in 76 Am. St. Rep., 382, and annotations in 18 A. L. R., 801, where the authorities from all over the country are collected. This latter annotation follows two cases in the same Report wherein it is held:

1. "The owner of a building in process of construction by an independent contractor is not liable for injury to a pedestrian on the adjoining street by a hot rivet which falls when thrown from one workman to another as a method of doing the work, where a protective cover had been placed over the sidewalk, since the workman's act was not a necessary detail of the work so as to render it inherently dangerous and charge the owner with liability." *Smith v. Bank,* 135 Tenn., 398, 186 S. W., 465, 18 A. L. R., 788.

2. "The removal of a sign from a building standing flush with the sidewalk is not so inherently dangerous that the property owner cannot relieve himself from liability for injury negligently inflicted by workmen upon persons passing along the street, by letting the work to an independent contractor." *Press v. Penny,* 242 Mo., 98, 145 S. W., 458, 18 A. L. R., 794.

Simply stated, the rule is this: If the thing contracted to be done involves, as a direct consequence, a danger which the owner of the premises is bound by law to avoid, or to provide against, then the delegation of the work to an independent contractor will not relieve from liability for consequences proximately resulting from negligence in its performance. But where the work is not inherently dangerous, and the matter complained of is purely collateral to the work contracted to be done, and is entirely the result of the negligence or wrongful acts of the contractor or his workmen, the rule is that the employer is not liable. *Robbins v. Chicago,* 4 Wall., 657, 18 L. Ed., 427.

Perhaps it should be observed that we are not now concerned with the liability of a municipal corporation, where the independent contractor acts only under authority of the city council, *King v. R. R.,* 66 N. Y., 181, or where the safety of a street or sidewalk is involved. *Bailey v. Winston-Salem,* 157 N. C., 252, 72 S. E., 966; *Carrick v. Power Co.,* 157 N. C., 378, 72 S. E., 1065. Such cases call for the application of other principles.

The building of a house, which includes the installation of plumbing, is not regarded as a dangerous undertaking, *Drake v. Asheville, supra,* yet in the instant case it is said the work done under the Elliott contract,

which only calls for the installation of plumbing in the ordinary manner, is "too obviously dangerous to be debatable." This goes a bow-shot farther than anything in the books.

BARNHILL and WINBORNE, JJ., join in this opinion.

CLARKSON, J., concurring in the main opinion: I agree that a ditch two feet wide and three and a half feet deep, with a large sewer pipe at the bottom, and at the very edge of a porch on which children are accustomed to play is both "obviously" and "inherently" dangerous; and both because of its character and its location comes within the sound policy of the law which requires even the employer of an independent contractor to see to it that due care is observed and proper precautions taken to prevent injury—as a nondelegable duty. The contract between defendant and Oliver expressly called for the making of this excavation, and the contract in pursuance of it between the defendant and Elliott requires it. Elliott certainly was not expected to burrow underground to lay the sewer pipe. Rockingham Homes, Inc., knew in advance what had to be done, inspected it at different times during construction. The work was done within a few yards of the defendant's main office, and its manager walked by it every day. Whatever danger existed was in the work itself and not in any unusual way it was performed. The contractor could only have avoided the injury by taking certain precautions which it was not only his duty to take, but the duty of the defendant Rockingham Homes, Inc., to see taken.

The propriety of basing the rule on a definite working principle rather than leaving it to the court on an arbitrary appraisal of the degree of danger involved became apparent long ago, and that principle is exemplified in the texts and authorities cited in the opinion. It takes no extra or unusual risk, peril, or hazard to constitute danger. Danger is defined in Century, Webster, as "exposure to harm or injury." This is sufficient to raise the duty. And was there danger? I am not swerved in my thinking by any sympathy for this child, the unfortunate victim of this harmless excavation. But the occurrence itself, and its manner—plunging head-first into an open ditch and fracturing her skull upon its cast-iron bottom—is the most eloquent testimony of intrinsic danger. And it is legitimate evidence. Surely it should not require a similar sacrifice of a dozen children to prove it so.

I think the law applicable to this case is aptly expressed in the authorities cited in the main opinion, in which I concur.